HUNTER, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 10—June 18, 1923.*

*Abortion: Identity of person performing illegal operation: Evidence: Sufficiency.*

The testimony of the woman on whom an abortion was performed and who was ordered by the court to testify pursuant to sec. 4078*d*, Stats., by the provisions of which she was granted immunity from prosecution, is *held* sufficient to identify the defendant as the one who performed the operation, though she testified she had but little opportunity to observe him at the time, and had testified at the preliminary examination that she knew it was defendant only because another had told her so, and had described the man performing the operation as a larger man than the defendant. OWEN and ESCHWEILER, JJ., dissent.

ERROR to review a judgment of the circuit court for Fond du Lac county: W. E. HURLBUT, Judge. *Affirmed.*

Abortion. The plaintiff in error, hereinafter called the defendant, together with Ed. Reinhold and Joseph Flemming, were charged with abortion upon the person of Martha Kretch, an unmarried female. Upon the trial Reinhold was discharged and the defendant *Hunter* and Joseph Flemming were found guilty of having produced a miscarriage upon the person of Martha Kretch. Upon the verdict the court imposed sentence, and a writ of error was sued out in this case to review the proceedings resulting in the conviction of *William Hunter*.

For the plaintiff in error there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *James Murray,* district attorney of Fond du Lac county, and oral argument by *Mr. Murray* and *Mr. Messerschmidt.*

The following opinion was filed April 3, 1923:

Rosenberry, J.    But a single question is raised in this case.    It is contended by the defendant that the evidence as to the identity of *William Hunter* was not sufficient to sustain the verdict of the jury.    It appears that some three weeks prior to January 9, 1922, Martha Kretch and Joseph Flemming met the defendant *William Hunter;* that on the evening of January 9, 1922, Martha · Kretch and Joseph Flemming, the man who was the father of her unborn child, went to the boarding house of Ed. Reinhold, procured a room, and, shortly after, a third person came into the room; that a criminal operation was then performed, which within a few days thereafter resulted in a miscarriage and subsequent illness of the witness, Martha Kretch.

It appears that Martha Kretch was ordered to testify pursuant to the provisions of sec. 4078*d,* Stats., by the provisions of which she was granted immunity from prosecution.    Upon her direct examination she testified that after she and Flemming entered the room *Dr. Hunter* came in; that as she was taking off her hat and coat *Dr. Hunter* removed his hat and coat; that she then took her position on the bed where the operation was performed, during which time she says her eyes were closed and she did not see the face of the man who performed the operation, but heard him give directions to Joseph Flemming as to where and how the lamp was to be held.    Her direct examination is clear and positive upon these points.    She

further testified that as she got up from the bed *Dr. Hunter* was putting on his coat and cap or hat. She is also clear and positive in her testimony that the person who was there was *Dr. Hunter,* whom she saw about three weeks before. Upon her cross-examination it was made to appear that at the time of the preliminary examination Miss Kretch had described *Dr. Hunter* as being a man as large as Chief of Police Nolan, it appearing that Chief of Police Nolan is a man fifty-two years of age, six feet one inch in height, weighing 220 pounds; that the defendant *Hunter* is forty-eight years of age, five feet eight inches high, weighing 160 pounds. She also testified on cross-examination that she did not see the face of *Dr. Hunter* while he was in the room. She also testified that on the trial she was caused to say that it was *Dr. Hunter* who was present there that night by reason of what Joseph Flemming told her. Upon redirect examination it appeared that the testimony of Miss Kretch was taken in the hospital; that at that time the defendant *Hunter* had on his overcoat. It further appeared upon the redirect examination that at the time three weeks before the performance of the illegal operation she was in the room with *Hunter* at the bedside for fifteen or twenty minutes. It also appears quite clearly from her cross-examination that she learned the name of the person who performed the operation through the defendant Joseph Flemming.

The question of the sufficiency of the evidence of the witness Kretch to identify the defendant was argued very thoroughly to the trial court. Full instructions were given as to reasonable doubt, credibility of witnesses, and burden of proof, and the court further instructed the jury, at the request of the defendant:

"If there is any reasonable doubt in your mind as to the presence of the defendant, *Wm. Hunter,* at the time it is alleged that the crime mentioned in the ·information was committed, you must find him not guilty.

"You are instructed that the burden of proving that the defendant *Wm. Hunter* was present at the time of the alleged offense is upon the state, and the state in this action must prove beyond a reasonable doubt that *Wm. Hunter* was present at the time of the alleged commission of the offense charged in the information. . . .

"If you find that any witness sworn to testify in this case has wilfully testified falsely to any material matter, you may entirely disregard the testimony of that witness, although you are not compelled to do so, except in so far as corroborated by other credible evidence. . . .

"You will reject and dismiss from your minds all and any testimony of the witness Miss Kretch as to what she had been told relating to the defendant *William Hunter,* subsequent to the alleged act of abortion, by the defendant Flemming.

"You are instructed that you are to draw no inference of guilt from the defendant *Hunter's* failure to testify in this case. The law provides that he is not required to testify in a case of this nature, and it is improper for the state or the district attorney or any other person to comment on the failure of the defendant *Hunter* to testify."

It cannot be disputed that the testimony of the witness, Miss Kretch, upon the trial was to some extent impeached by her testimony given upon the preliminary examination. It is quite apparent that she was not a willing witness. She testified pursuant to the order of the court upon matters which involved her moral turpitude as well as that of the defendant. Under the circumstances of this case, the question of whether or not her testimony was sufficiently credible to sustain the verdict of the jury was peculiarly for the trial court. The witness was before the court, the jury and the trial judge had an opportunity to observe her manner and demeanor upon the stand, and there were no doubt many circumstances connected with her testimony not reproduced by the written record. Under the instruction of the court the jury must have found the defendant's identity to be established beyond a reasonable doubt. Upon the

whole case we are of the opinion that the trial court correctly held that the evidence was sufficient to sustain the verdict in the respect complained of.

*By the Court.*—Judgment affirmed.


The following opinion was filed April 9, 1923:


OWEN, J. (*dissenting*).  I do not think there is any competent evidence in this case to identify the defendant *Hunter* as the one who performed the operation which resulted in the miscarriage.  The female upon whom the operation was performed was the only witness who testified upon this subject.  Upon the preliminary examination she testified, positively, that she did not look at the man who performed the operation; that the room was illy lighted; that she laid on the bed with her eyes closed and did not look at him.  The defendant *Hunter* was pointed out upon this examination, and the witness was asked the direct question if *Hunter* was the man who performed the operation.  She replied: "I don't know; I thought he was a fatter, a bigger man than that."  And again she testified: "There was nothing about his nose, or eyes, or face I remember, because I did not see his face at any time while I was in the room."  "*Q.* Would you know that man if you saw him again?  *A.* I didn't look at him.  There was only lamps there."  Upon the trial she testified in her direct examination that the defendant *Hunter* was the man who performed the operation, but upon her cross-examination it appears that she so testified for the sole reason that Joe Flemming told her that the man was *Dr. Hunter,* and her cross-examination upon the trial makes it as clear as did her cross-examination on the preliminary hearing that she was unable to identify the defendant from her own knowledge or observation, and that the only reason for her assuming to say that the defendant *Hunter* was the man was because she relied upon the statement of Joe

Flemming that he was the man. This, in my opinion, renders her testimony pure hearsay and it should have been excluded by the court. I therefore dissent.

I am authorized to state that Mr. Justice ESCHWEILER concurs in this opinion.

A motion for a rehearing was denied, without costs, on June 18, 1923.