UNITED STATES, Appellee

v

WALTER BALDWIN, JR., Private First Class,
U. S. Army, Appellant

10 USCMA 193, 27 CMR 267

No. 11,872

Decided February 6, 1959

First Lieutenant Phillip J. Miller argued the cause for Appellant, Accused. With him on the brief were Major Edward Fenig, Captain Arnold I. Melnick, and First Lieutenant Judson A. Parsons, Jr.

First Lieutenant Avram G. Hammer argued the cause for Appellee, United States. With him on the brief were Major Thomas J. Nichols, First Lieutenant Chester F. Relyea, and First Lieutenant Allen I. Saeks.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted of offenses of lewd and lascivious conduct, pandering, breach of restriction, unlawful entry, rape, assault with a dangerous weapon, and failures to obey two lawful orders, in violation of Articles 134, 120, 128, and 92 of the Uniform Code of Military Justice, 10 USC §§ 934, 920, 928, and 892, respectively. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for twenty years. After approval by the convening authority, a board of review in the office of The Judge Advocate General of the Army set aside the findings of pandering and rape, affirmed the other findings of guilt and approved the sentence after reducing the period of confinement to four years. We granted review to determine whether the law officer erred when he failed to instruct, as requested by the defense, that if a witness lied in part, his entire testimony could be rejected.

It is not necessary for us to detail all of the lurid facts involved in this series of offenses as it is adequate for our disposition of the issue to state that the requested instruction was directed toward the victims of the alleged rape and one of the offenses involving lewd and lascivious conduct. The court-martial acquitted accused of the lewd act in question, and the board of review dismissed the rape offense, but the testimony of the rape victim furnishes the principal evidentiary support for the affirmed offenses of assault with a deadly weapon and unlawful entry.

An out-of-court conference was held prior to the giving of instructions, and at that time defense counsel stated to the law officer his desire that the following instruction be included in the charge, "if the court finds that any witness has falsely testified to a material matter, the court may disregard the entire testimony of said witness." The law officer replied he would be willing to give such an instruction but, apparently through inadvertence, it was not included in the charge. This oversight is understandable when consideration is given to the fact that he gave extensive instructions on the many offenses involved, charged fully on credibility and accomplice testimony, submitted all mandatory instructions, and informed the court on special issues. In that connection, it is of interest to note the omission escaped detection by the law officer, trial counsel, and four military and civilian defense counsel.

Appellate defense counsel, in sppport of their contention, rely largely upon the language used by the Supreme Court in The Santissima Trinidad and The St. Ander, 7 Wheat 283 (US 1822). Mr. Justice Story, in speaking for the Court in that case, had this to say:

". . . But where the party speaks to a fact in respect to which he cannot be presumed liable to mistake, as in relation to the country of his birth, or his being in a vessel on a particular voyage, or living in a particular

place, if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood; and courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the maxim falsus in uno, falsus in omnibus. What ground of judicial belief can there be left, when the party has shown such gross insensibility to the difference between right and wrong, between truth and falsehood?"

That was a suit in admiralty in which the Court was considering the facts and the author Justice was applying the principle to certain evasive witnesses who the Court concluded had deliberately falsified. No instructional question was involved. However, since that time the maxim has been considered by many courts and text writers. Dean Wigmore in Wigmore, Evidence, 3d ed, § 1008, expresses his view of the rule in the following language:

"It may be said, once for all, that the maxim is in itself worthless;— first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves."

We need not accept Dean Wigmore's evaluation in toto as we use his views merely to reflect that the rule is subject to criticism. So far as decided cases are concerned, there appears to be a division of authorities as to the necessity of a court using the maxim as a basis for an instruction. Rather than cite the many holdings, we choose to express our views by quoting from two well-accepted cases which in essence

hold it is not error to give or withhold the instruction. In People v Kennedy, 21 Cal App2d 185, 69 P2d 224, the trial court, at the request of the State, gave an instruction embodying the concept. The defendant took exception and raised the error on appeal. The District Court of Appeals, Third District, in that instance advanced this rationale:

"This is a correct statement of the law. This very instruction has been repeatedly approved by our Supreme Court. People v Plyler, 121 Cal 160, 53 P 553. Moreover, it is a mere statement of a commonplace rule which would naturally govern all reasonable and conscientious jurors in attempting to weigh the probative value of evidence. Reynolds v E. Clemens Horst Co., 35 Cal App 711, 719, 170 P 1082; People v Hansen, 130 Cal App 217, 221, 19 P(2d) 993; People v Tibbs, 143 Cal 100, 76 P 904. It has been held that neither the giving nor the refusing of such commonplace principles applicable to the weighing of evidence by juries will warrant the reversal of a judgment which is otherwise valid. People v Hewitt, 78 Cal App 426, 248 P 1021; People v Hansen, supra; Hirshfeld v Dana, 193 Cal 142, 223 P 451. It will be observed the jury was not instructed that it must *disregard or reject* the entire evidence of a witness who has willfully sworn falsely to a material fact. It is merely told that when a witness has deliberately perjured himself regarding a material fact in the case, it is the duty of the jury to *distrust* the balance of his testimony. This merely means what any person of common judgment would know without judicial instruction, that it is the part of wisdom and a duty on the part of jurors to carefully scrutinize with distrust or suspicion the entire testimony of a witness who has willfully perjured himself regarding a material fact in the case. This rule still permits a juror to accept other testimony of a witness who has willfully sworn falsely regarding a material fact, if, in spite of merited suspicion on the part of the juror, he still believes the balance of the testimony to be true. It

**195**

was not reversible error to have given the foregoing challenged instruction."

In Schneider v United States, 57 F2d 454 (CA 3d Cir) (1932), the witness admitted he had committed perjury in another court of justice with respect to the same transaction concerning which he had testified in the case involved, and the defense requested an instruction on the maxim. The trial judge refused the instruction. On appeal, the Circuit Court made the following comment:

"The court charged the jury in accordance with all of that request except the last paragraph, which he refused, to which action exception was taken and error assigned. It had been admitted by the witness that at a hearing in the Court of Chancery of New Jersey he had testified to certain facts which, at the trial of the case before us for review, he admitted were untrue. If the court had charged as requested, the effect would have been to withdraw from the jury all of the testimony of this witness. We think the effect of an admission of having testified in another suit to the contrary of the witness's testimony in the suit on trial, is for the jury under proper instructions.

"In the case of the Santissima Trinidad, 7 Wheat 283, 339, 5 L Ed 454, Mr. Justice Story said: 'But where the party speaks to a fact in respect to which he cannot be presumed liable to mistake, as in relation to the country of his birth, or his being in a vessel on a particular voyage, or living in a particular place, if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood; and courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the maxim falsus in uno, falsus in omnibus.'

"But this was said in discussing the weight of the evidence, and was not, as we take it, intended to lay down a positive rule of law, to be applied in all cases. Addis v Rushmore, 74 NJ Law, 649, 65 A 1036. See

Shecil v United States, 226 F 184, 187 (CCA 7) where, in commenting on the maxim, Judge Mack said: 'The maxim, "Falsus in uno, falsus in omnibus," as pointed out by Wigmore in his Evidence (volume 2, §§ 1008–1015), has to do solely with the weight, not with the admissibility, of the evidence. As the jury is the sole judge of the credibility of witnesses, any instruction in respect thereto is, at best, merely advisory. If the jury believe that a witness has willfully and knowingly given false testimony, they are no longer required, as a rule of law, to reject his entire testimony.'

"It was not for the court to instruct the jury to utterly disregard the witness's testimony. The trial judge, having properly instructed them as to their duty in considering the perjured witness's testimony, committed no error in refusing to charge in accordance with the concluding paragraph of the defendants' request."

We reached substantially the same conclusion in United States v Polak, 10 USCMA 13, 27 CMR 87, where we discussed briefly the necessity of a law officer sua sponte instructing the court-martial on the theory. In that instance we stated:

"Counsel for accused, to support this facet of the appeal, finally assert that this case calls for application of the maxim, 'Falsus in uno, falsus in omnibus.' That principle is 'by the weight of authority . . . not a mandatory rule of evidence, but is rather a permissible inference that the jury may or may not draw.' 98 CJS, Witnesses, § 469; see also cases there cited. Here the triers of fact were afforded the opportunity of drawing the inference, but they chose to believe the witness. We, therefore, find against the accused on this asserted error and pass on to consider the second granted issue."

The rationale of that case leads us to overrule the present assignment of error. If, as we there said, the principle embodies a permissible inference which the court may draw and is not a mandatory rule of evidence, then the law of-

ficer would not have erred had he refused to submit the theory to the court. A fortiorari he did not err when he neglected to do so.

Finally, without regard to the necessity of having to give the requested instruction, we have examined the record to determine if an adequate charge on credibility was submitted by the law officer. There can be no question about the fact that the victim of the assault and the rape was thoroughly cross-examined on matters affecting her credibility. She admitted she was a prostitute and the accused was one of her clients; that she made her living in this occupation; that she had cohabited with men to whom she was not married; that she had been arrested for vagrancy; that she had stolen from a man who had befriended her; that she was a bar girl in Mexico; and that she had posted bonds (with the proceeds from acts of prostitution) on four charges. In addition, one female witness testified she had been told by the victim the accused had not raped her. With that evidentiary background, the law officer gave these instructions concerning her credibility:

"There is no dearth of evidence to show that . . ., the complaining witness and the victim of the alleged rape was at that time, a common prostitute. The crime of rape may be committed against a woman who is a common prostitute as well as against the purest woman. However, in a prosecution for rape, any evidence, otherwise competent, tending to show the unchaste character of the alleged victim is admissible and should be considered by the court on the issue of the probability of her having consented to the act charged and on the question of her credibility. As to these issues, evidence of her lewd repute, habits, ways of life, or associations and of her specific acts of illicit sexual intercourse or other lascivious acts with the accused or others, is material.

. . . . .

". . . You are advised that a conviction cannot be based upon the uncorroborated testimony of an alleged victim in a trial for a sexual offense if such testimony is self-contradictory, uncertain or improbable.

. . . . .

"In addition, there is evidence of the opinion of Ruby Fields as to the lack of credibility of . . . [the complaining witness]. Further, several of the witnesses have admitted convictions of offenses involving moral turpitude. You may consider this evidence as bearing upon the worthiness of belief of these witnesses and the weight to be given to their testimony.

"Such evidence is not, however, the only factor which you may consider in judging the credibility of the witnesses. In making your determination you may also consider all other factors bearing upon their credibility including your own observations of the witnesses during the course of their testimony and the nature of their testimony particularly from the standpoint of certainty, probability and whether or not it was self-contradictory.

. . . . .

". . . The final determination as to the weight of the evidence and the credibility of the witnesses in this case rests solely upon you the members of the court."

We conclude from the foregoing that the charge was sufficient and that there was no instructional error in the case. Accordingly, the issue is resolved against the accused, and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I agree that the principle enunciated in the instruction "Falsus in uno, falsus in omnibus" embodies a permissible inference which the jury may draw and that it is not a mandatory rule of evidence. However, in circumstances where the law officer gives this instruction I do not believe that it completely states the inference the jury may draw.

Rather, I believe the instruction must add that the statement of the witness must constitute wilful testimony as to a material issue. I am further of the opinion that corroboration will disallow the jury from drawing the permissible inference.

A few examples selected at random support my conclusion.

". . . [I]f any witness testifies falsely in this matter upon a material fact, deliberately testifies falsely, you have a right to disregard all or any part of that witness' testimony, provided it is not corroborated by any other competent testimony."[1]

"If you find that any witness sworn to testify in this case has willfully testified falsely to any material matter, you may entirely disregard the testimony of that witness, although you are not compelled to do so, except in so far as corroborated by other credible evidence."[2]

"If you find in this case that any witness has testified knowingly and falsely, has sought to pervert his testimony in a manner either prejudicial to or beneficial to the state or the defendant, or has sought to tell facts as of his own knowledge or to detail facts or circumstances as of his own knowledge, which you believe from the evidence either did not in fact transpire, or if they did transpire could not have been within the field of observation of the witness, then I instruct you that you may disregard all the evidence of such witness wherein he is not corroborated by other evidence."[3]

[1] People v Paremba, 240 Mich 489, 215 NW 345.
[2] Hunter v State, 181 Wis 167, 192 NW 984.
[3] Reid, Branson's Instructions to Juries, Military Edition, § 3317.