UNITED STATES, Appellee

v

TRUMAN A. ROBBINS, Private First Class,
U. S. Army, Appellant

16 USCMA 474, 37 CMR 94

No. 19,554

December 30, 1966

*Captain Dennis R. Hunt* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker, Major David J. Passamaneck,* and *Captain Peter A. Anderson.*

*Captain Maurice Jay Kutner* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski, Lieutenant Colonel Francis M. Cooper,* and *Captain Walter L. Harvey.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial in Vietnam convicted the accused of attempted murder and communicating a threat to kill his company commander, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 USC §§ 880 and 934, respectively, and imposed a sentence extending to dishonorable discharge and confinement at hard labor for ten years. The board of review, however, reduced the find-

474

ings of guilty of attempted murder to assault with a dangerous weapon, and changed the period of confinement to three years. We granted further review to consider the correctness of certain instructions relating to the merits and a ruling excluding testimony by a defense witness in connection with the sentence.

After advising the court-martial as to the elements of the offenses charged, the law officer instructed on a number of rules of law important to the issues, such as proof of intent by circumstantial evidence and the effect of intoxication. Included in these instructions was one on the right of the court-martial to determine the credibility of each witness. Part of this instruction is the subject of the accused's principal assignment of error. It is as follows:

". . . Now, if you believe that a witness has willfully sworn falsely to a material fact in the case, you may disregard his testimony in whole or in part, except insofar as it may have been corroborated by other credible evidence."

The instruction describes one of the modern versions of the maxim "falsus in uno, falsus in omnibus," that is, "False in one thing, false in everything." Black's Law Dictionary, 4th ed, page 727. In its original formulation, the maxim apparently required rejection of the whole of a witness' testimony when it was determined that he willfully testified falsely to a material fact. Stoffer v The State, 15 Ohio St 47 (1864), overruled in Mead v McGraw, 19 Ohio St 55 (1869); The State v Jim, 12 NC 508 (1828), corrected in State v Williams, 47 NC 257 (1855); see also The Santissima Trinidad and The St. Ander, 7 Wheat 283 (US 1822). The idea that all the witness' testimony must be rejected was itself rejected by American courts, as it was increasingly recognized the maxim dealt merely with the weight of the evidence, not the competency of the witness. See Metropolitan Life Ins. Co. v Wright, 190 Miss 53, 199 So 289 (1940); Wigmore, Evidence, 3d ed, § 1008. Instead of instructing that it

was mandatory to disregard all the witness' testimony, the courts began to instruct in permissive terms, that is, that the jury could disregard the whole of the testimony, when it determined the witness had willfully lied in a material part. In turn, this permissive instruction became the subject of wide criticism. One respected authority writing on the changes in the law has said:

"The correct view of them, and the one which gains increasing support, seems to be that however phrased, whether in the objectionable and largely outmoded mandatory form in effect requiring the jury to disregard the entire testimony of any witness intentionally testifying falsely as to any material matter, or in the common permissive form, literally purporting to authorize such 'disregard' (or rejection), they are in practice and total result insupportable." [Annotation: Modern view as to propriety and correctness of instructions referable to maxim "falsus in uno, falsus in omnibus," 4 ALR2d 1077, 1078.]

It would serve no useful purpose to review the various ways in which the maxim is currently used in the courts of the several states. We commented on the diversity in United States v Baldwin, 10 USCMA 193, 195, 27 CMR 267. In that case, we held it was "not error to give or withhold" the instruction in its permissive form. We pointed out that the maxim is now universally understood as dealing solely with the weight, not the admissibility, of the testimony. We also observed it has little value as guidance to the jurors because it asserts an idea "any person of common judgment would know without judicial instruction." People v Kennedy, 21 Cal App 2d 185, 69 P2d 224, 233 (1937).

Government counsel contend our holding in *Baldwin* requires affirmance of the instruction in this case. The two instructions, however, are different. The instant instruction includes matter not present in the instruction discussed in *Baldwin*. There,

**475**

the instruction dealt only with the advice that " 'if the court finds that any witness has falsely testified to a material matter, the court may disregard the entire testimony of said witness.' "[1] *Id.* at page 194. The instruction here includes an additional clause dealing with the effect of evidence corroborative of the testimony of the witness. Examining the impact of a corroborative clause, one commentator has aptly noted:

"To tell a jury, in accordance with the mandatory rule, that if any witness has wilfully testified falsely as to any material matter they *must* disregard his entire testimony unless, or except to the extent that, they find it corroborated is clear and intelligible, however regrettable. But to tell them that they *may* disregard the entire testimony of such a witness unless corroborated is confusing, or worse." [4 ALR2d, *op. cit.* at page 1101.]

Inclusion of the corroborative clause in an instruction on the maxim was specifically condemned by the Court of Appeals for the Seventh Circuit in Shecil v United States, 226 Fed 184, 187 (1915). The Court said:

"The maxim, 'Falsus in uno, falsus in omnibus,' as pointed out by Wigmore in his Evidence (volume 2, §§ 1008–1015), has to do solely with the weight, not with the admissibility, of the evidence. As the jury is the sole judge of the credibility of witnesses, any instruction in respect thereto is, at best, merely advisory. If the jury believe that a witness has willfully and knowingly given false testimony, they are no longer required, as a rule of law, to reject his entire testimony. To instruct them, however, that they may, in that event, reject his whole testimony, 'unless he is corroborated by other

credible evidence,' as stated by the trial judge, or 'except in so far as it is corroborated by other credible evidence,' as suggested in our opinion, implies an obligation not to reject at least that part of his testimony which is so corroborated. There is no such obligation. The jury are at liberty to reject his entire testimony, notwithstanding the corroboration. 2 Wigmore, Evidence, § 1012. They are not compelled to believe and to act upon any part of it. They may believe him to be so discredited by his falsehood in the one matter that they will give no weight to his testimony on any point. They may, however, well be cautioned and advised against rejecting so much of a discredited witness' testimony as is corroborated by other credible evidence, and especially when they come to weigh the evidence in the case for the purpose of determining whether or not the burden of proof has been sustained."

Other courts, generally in accordance with the authority of specific statutes, have approved various forms of instruction on the maxim which contain a corroborative clause. See People v Pursley, 302 Ill 62, 134 NE 128 (1922); People v Paremba, 240 Mich 489, 215 NW 345 (1927). In our opinion, however, the meaning of the instruction is sufficiently confusing to require its condemnation. We agree with the *Shecil* case that it is error to give the instruction.

Government counsel contend there is "no possible basis" upon which the erroneous instruction can be considered prejudicial to the accused because there were "no incidents of impeachment . . . [and] none of the prosecution witnesses were even contradicted" as to any material fact.[2]

---

[1] The requested instruction, which the law officer refused to give, was erroneous in that it did not provide that the witness *willfully* testified falsely. See Pinkerton v State, 246 Ala 540, 22 So 2d 113 (1945), apparently contra, Mason v United States, 95 F2d 612 (CA 5th Cir) (1938).

[2] As far as contradiction is concerned, the Government's argument disregards a permissible inference in the accused's testimony. The prosecution's principal witness testified the accused released the safety with his right thumb; the accused testified he is left-handed and that he normally releases the safety on a rifle with the thumb of his left hand. Another

We disagree. Rejecting a similar contention of lack of prejudice, the Supreme Court of Missouri has said:

". . . We are aware that the courts, including this court, have tolerated instructions of this character on the ground that they have done no harm. When, however, the jury are told that the issue of perjury has been substantially raised in the case, and that it is their duty to guess or otherwise ascertain whom it concerns, and to what 'material matter' it refers, they are invested with a roving and predatory commission dangerous alike to all . . . litigants and witnesses." [Keeline v Sealy, 257 Mo 498, 165 SW 1088, 1096 (1914).]

The same conclusion was reached by the Court of Appeals for the Fourth Circuit in Virginian Ry. Co. v Armentrout, 166 F2d 400, 405, 406, 4 ALR2d 1064 (1948). The Court said:

". . . There was no occasion to apply to such testimony the harsh falsus in uno falsus in omnibus rule, which has little or no place in modern jurisprudence. That rule arose when conviction of felony disqualified a witness; and it was based on the reasoning that, since perjury was a felony, the jurors should disregard the testimony of one whom they found to have perjured himself in the trial before them. The rule has been watered down until it means no more now than that the jury may disbelieve a witness if they think he is lying; but they need no instruction as to that and giving it with respect to a particular witness accomplishes nothing except to convey to the jury the impression that the judge thinks that the witness has lied. . . .

". . . Even if it were a proper rule to apply in some cases, there was no reason to apply it here; and its prejudicial effect was manifestly not removed by the charge given after the taking of defendant's exception. This did no more than instruct the jury that they were to judge as to whether there had been any contradiction in the testimony of a witness and repeat that, upon the finding of a contradiction, they might consider this in determining whether they would believe the witness' testimony."

Several instructions pertaining only to Charge II are also challenged by the accused.[3] We can safely put aside discussion of these since it is not likely they will be given at a rehearing of the cause. However, some brief comments are appropriate on the law officer's ruling excluding certain testimony during the sentence proceedings.

The accused's platoon sergeant was called as a defense witness. He testified to the high quality of the accused's performance of duty. Then he was asked by defense counsel whether he "would . . . be willing to take" the accused back into his platoon. The law officer refused to allow the witness to answer on the ground the answer could constitute "an invasion" of the court-martial's responsibility. Relying upon the general relaxation of the rules of evidence during sentence proceedings, appellate defense counsel contend the law officer erred. See Manual for Courts-Martial, United States, 1951, paragraph 75c(1); United States v Ault, 15 USCMA 540, 541, 36 CMR 38; United States v Evans, CM 414053, decided July 22, 1966, not officially reported. Government counsel maintain that the answer would have constituted "opinion" testimony as to whether the accused should be retained in the service, and as such was properly excluded on the authority of United States v Capito, 31 CMR 369, petition denied, 13 USCMA 684, 32 CMR 472. See also

---

implied conflict appears as to the amount of intoxicants the accused drank.

[3] At one point in the instructions on communicating a threat, the law officer referred to "a desire to kill" instead of a determination to injure or kill, see United States v Holiday, 4 USCMA 454, 16 CMR 28; at another, he stated that "the language . . . indicated an intention to injure." (Emphasis supplied.) Cf. United States v Sulima, 11 USCMA 630, 29 CMR 446.

United States v Lucas, 32 CMR 619. In rebuttal, the accused contends *Capito* is inapplicable.

*Capito* does not bar exclusion of testimony of the kind offered here. Apart from differences as to the nature of the testimony in *Capito,* the proffered testimony was in the form of a written statement which the Government had no opportunity to probe by cross-examination. Consequently, it was well within the law officer's discretion to reject the "opinion" part of the witness' statement. United States v Sweeney, 14 USCMA 599, 34 CMR 379. Here, the witness was before the court, and the underlying reasons for his answer could be thoroughly tested by cross-examination. Also, assuming, as the Government contends, that an affirmative answer would have constituted an expression of opinion by the witness, in substance, the opinion bears on the accused's character. Direct testimony as to the witness' opinion of the accused's character is admissible in a court-martial. Manual for Courts-Martial, supra, paragraph 138$f$(1); United States v Gagnon, 5 USCMA 619, 623, 18 CMR 243. It is apparent, therefore, that the law officer's ruling excluding the witness' answer was error.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges FERGUSON and KILDAY concur.