UNITED STATES, Appellee

v

LEONARD C. NORRIS, Jr., Private,
U. S. Army, Appellant

16 USCMA 574, 37 CMR 194

No. 19,688

March 24, 1967

Captain *Paul V. Melodia* argued the cause for Appellant, Accused. With
him on the brief were Colonel *Daniel T. Ghent* and Captain *Frank J. Mar-
tin, Jr.*

Captain *Maurice Jay Kutner* argued the cause for Appellee, United
States. With him on the brief were Colonel *Peter S. Wondolowski*, Lieu-
tenant Colonel *David Rarick*, and Lieutenant Colonel *Francis M. Cooper*.

## Opinion of the Court

FERGUSON, Judge:

Tried and convicted by a general
court-martial at An Khe, South Viet-
nam, of absence without leave, willful
disobedience of an order of a non-
commissioned officer and assault on a

574

superior officer (two specifications), in violation of Articles 86, 91 and 90 of the Uniform Code of Military Justice, 10 USC §§ 886, 891 and 890, respectively, appellant was sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The board of review affirmed the findings without opinion, but reduced the confinement at hard labor to three years.

This Court granted appellant's petition on the propriety of an instruction of the law officer dealing with the maxim, "falsus in uno, falsus in omnibus," and the admission at trial of certain nonverbatim Article 32 testimony.

The instruction under scrutiny is found in that portion of the law officer's advice covering the credibility of witnesses. In this regard, he informed the court:

"It is the province of the members to determine the credibility of each witness, the weight to be given his testimony. In weighing the testimony of each witness, the member should consider his relationship to the government or the accused, the witness' interest, if any, in the outcome of the case, his demeanor or manner of testifying, his fairness and intelligence, and the extent to which he has been corroborated or contradicted, if at all, by other credible evidence. *If you believe that a witness has willfully sworn falsehood to a material fact in the case, you may disregard his testimony in all or part, except in so far [sic] as it may have been corroborated by other credibile [sic] evidence."* [Emphasis supplied.]

This instruction is almost a duplicate of that denounced in United States v Robbins, 16 USCMA 474, 37 CMR 94. In import, they are identical.

The Government adopts the view that *Robbins,* supra, is distinguishable. It contends that the testimony ▉▉▉▉▉ ▉ in that case was in conflict on "collateral matters." Thus, if the court members followed the instruction in question, they may have

disbelieved the appellant as to those matters and reached a similar conclusion as to material facts involving innocence or guilt. We reject this argument forthwith for, in *Robbins,* supra, the avenue of impeachment included but did not solely rest upon a "collateral" approach. Perhaps the best answer is found in the opinion itself. Chief Judge Quinn, on behalf of a unanimous Court, declared at pages 476 and 477:

"Government counsel contend there is 'no possible basis' upon which the erroneous instruction can be considered prejudicial to the accused because there were 'no incidents of impeachment . . . (and) none of the prosecution witnesses were even contradicted' as to any material fact. We disagree. Rejecting a similar contention of lack of prejudice, the Supreme Court of Missouri has said:

'. . . We are aware that the courts, including this court, have tolerated instructions of this character on the ground that they have done no harm. When, however, the jury are told that the issue of perjury has been substantially raised in the case, and that it is their duty to guess or otherwise ascertain whom it concerns, and to what "material matter" it refers, they are invested with a roving and predatory commission dangerous alike to all . . . litigants and witnesses.' (Keeline v Sealy, 257 Mo 498, 165 SW 1088, 1096 (1914).)

"The same conclusion was reached by the Court of Appeals for the Fourth Circuit in Virginian Ry. Co. v Armentrout, 166 F2d 400, 405, 406, 4 ALR2d 1064 (1948). The Court said:

'. . . There was no occasion to apply to such testimony the harsh falsus in uno falsus in omnibus rule, which has little or no place in modern jurisprudence. That rule arose when conviction of felony disqualified a witness; and it was based on the reasoning that, since perjury was a felony, the jurors should disregard the testimony

of one whom they found to have perjured himself in the trial before them. The rule has been watered down until it means no more now than that the jury may disbelieve a witness if they think he is lying; but they need no instruction as to that and giving it with respect to a particular witness accomplishes nothing except to convey to the jury the impression that the judge thinks that the witness has lied. . . .

'. . . Even if it were a proper rule to apply in some cases, there was no reason to apply it here; and its prejudicial effect was manifestly not removed by the charge given after the taking of defendant's exception. This did no more than instruct the jury that they were to judge as to whether there had been any contradiction in the testimony of a witness and repeat that, upon the finding of a contradiction, they might consider this in determining whether they would believe the witness' testimony.' "

In sum, we see in the case at hand, just as we did in *Robbins,* the use of a defective instruction that resulted in prejudice to the accused. Reversal necessarily follows.

Having resolved the first issue in favor of the petitioner, it would ordinarily be unnecessary to concern ourselves with the remaining issue, for as we have said, reversal is required. Realizing, however, that there is always the possibility of a rehearing, and that, once again, the questioned evidence may come to the fore, it appears proper and expedient now to consider and resolve the evidentiary question.

Two of the specifications charge Norris with violations of Code, supra, Article 90. In one, petitioner is said to have drawn his weapon against Lieutenant G, his superior officer, who was then in the execution of his office. The second count pictures appellant as having offered violence to the same officer by throwing him to the ground.

During the subsequent Article 32 investigation, this officer was sworn as a witness and testified on matters here relevant. Lieutenant G was thereafter slain in combat. Thus, in the court-martial which followed, only his purported Article 32 testimony was available to the prosecution. They utilized it, over defense objection.

In so doing, Government initially called Captain S, the Article 32 investigating officer, as a witness. Parenthetically, it must be here noted that the Article 32 proceeding was conducted without the benefit of an official court reporter, there being no requirement for such to be appointed. Cf. Uniform Code of Military Justice, Article 32(b), 10 USC § 832; Manual for Courts-Martial, United States, 1951, paragraph 34e. For this reason, an official verbatim record of the proceeding was nonexistent. In lieu thereof, Captain S asserted that, during the investigation, he questioned Lieutenant G as a witness. When asked if he had transcribed the Lieutenant's answers, he responded, "[t]he answer was not completely written down. The material part was recorded by me, personally; yes." He further elaborated, "I did not write the answer to every question; only the answer to those questions that were material to the charges and specifications." In short, Captain S conceded G's statement, as introduced by the prosecution, was not a verbatim record of that officer's Article 32 testimony. Without this evidence being received, a conviction of the above specifications will not stand. Accordingly, we are now asked to decide whether the admission during the court-martial of this nonverbatim Article 32 testimony was error.

Government counsel take the view there is no valid reason to distinguish this case from United States v Eggers. 3 USCMA 191, 11 CMR 191, and United States v Burrow, 16 USCMA 94, 36 CMR 250. Both these cases involved verbatim transcripts. Nevertheless, while admitting the nonexistence of military precedents, it is argued an analogous situation was recognized in *Eggers,* supra, at page 194, for there the Court "conceive[d] that the pretrial investigation in military practice may properly be identified with the

preliminary hearing of criminal law administration in the civilian scene." In a word, the admission of nonverbatim testimony, accompanied by traditional safeguards, is said to comport with long-standing principles applied in civilian jurisdictions.

In reply, appellate defense counsel point to the existence of a combination of factors which seemingly renders the admissibility of nonverbatim testimony an imprudent extension of the ordinary rule. Specifically, it is contended that an Article 32 officer, without legal training, may make rulings on materiality which are questionable; facts brought out by other means, but not included in the report, inevitably will bear the taint of immateriality; and, finally, failure to reproduce the whole testimony deprives accused of the right of cross-examination.

Fundamental to our consideration of the Government's contention are the provisions of Code, supra, Article 32, and paragraph 34, Manual, supra. In both, the investigating officer is directed to supply an accompanying "statement of the substance of the testimony taken" when forwarding charges and his report of investigation. An example of a comparative civilian practice is said to be found in the responsibilities of a committing magistrate. In discussing rules of testimonial preference, Dean Wigmore has written:

"**Magistrate's Report of Accused's Statement; General Principle.** The theory here is that, since the magistrate is required by law to take down in writing the statement of the accused, the written report thus made at the time is preferred to mere oral (or recollection) testimony of the terms of the statement; *i.e.* the official report is preferred not only to the recollection of any ordinary hearer but even to the recollection of the magistrate himself." [Wigmore, Evidence, 3d ed, § 1326.]

This observation is most perceptive, but further examination reveals its rationale is untenable. Thus, the Government has overlooked Wigmore's admonition that the above rule rests upon not one, but two assumptions. In essence,

the preference under discussion exists not only because the report was made in pursuance of an official duty imposed by law but—equally important—because the written report contained the *"entirety of what was said."* (Wigmore, supra, § 1326, at page 641.)

Seemingly inconsistent is Wigmore's subsequent remark that "verbal precision" is, in general, not required in proving oral utterances, as "the *substance* or effect is sufficient." Wigmore, supra, § 2097, at page 479. However, consistency is later redeemed, for he then declares "the single case in which Entirety of Parts is clearly required, namely, testimony at a former trial (*infra,* par. 4) appears to be treated judicially as exceptional." Wigmore, supra, § 2099, at page 489.

The same rule is applicable when testimony at a former trial is offered as a written report. Wigmore, supra, § 2103 (2), at page 502. Indeed, its verbatim character appears to be presumed.

Stenographic notes of an official reporter containing the offerings of a witness given at a former trial are similarly treated. In short, "a copy of the stenographic report of the entire testimony at a former trial, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, is competent evidence of what the deceased witness said." 20 Am Jur, Evidence, § 711, at page 597.

When used in criminal proceedings for the purpose of proving facts, as opposed to impeaching present testimony, documentary evidence of testimony may be proven by having the transcriber testify that the entries are accurate, correct, and that they are a "full reproduction" of the evidence given at the former trial. In this vein, former testimony may also be proved by the stenographic notes of an official reporter who testifies to their accuracy. Mattox v United States, 156 US 237, 39 L ed 409, 15 S Ct 337 (1895); United States v Yates, 107 F Supp 408 (SD Cal) (1952). By the same token, statutes may make official stenographic notes and transcripts admissible as being

*prima facie* correct. Cf. Todd v State, 13 Ala App 301, 69 So 325 (1915). Notes of an unofficial stenographer, judge, or justice of the peace, are equally competent if the writer testifies that the transcripts were identical with the testimony actually given at the former trial. Sekularac v State, 205 Ind 98, 185 NE 898 (1933). For a review of the entire subject, the reader is directed to the exhaustive Annotation at 11 ALR2d 30.

Generally speaking, applicable authorities lead to the conclusion that former testimony presented in ▆▆▆▆ ▆ documentary form requires proof of its completeness. Tested by this standard, the recordation of Lieutenant G's testimony must be held inadequate, for Captain S specifically informed the court his notes contained but a portion of the whole. In short, the evidence in question was inadmissible.

The decision of the board of review as to Charges II and III is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on these two charges may be ordered, or the board may reassess the sentence on the remaining findings of guilty.

Judge KILDAY concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

The majority's determination that the transcript of Lieutenant Grant's testimony was inadmissible is, in my opinion, contrary to law and sound judicial procedure. It is also unjustified by the facts because it is manifest that only irrelevant and immaterial matter was omitted from the transcript.

As to judicial precedent and sound practice, Ruch v Rock Island, 97 US 693, 694–695, 24 L ed 1101 (1878), is directly in point. There, two witnesses at a trial in the Federal district court in Chicago testified by deposition. A verdict was entered for the defendant, but it was set aside and a new trial ordered. In the interim, the great Chicago fire occurred, and all records of the first trial were destroyed. In addition, the deposition witnesses died.

At the second trial, over plaintiff's objection, the district judge admitted in evidence testimony by the commissioner who had taken the depositions and by the lawyer who had propounded the questions to one of the witnesses. The lawyer testified he could give only the "'main and principal points'" of the testimony of the witness he had questioned; and the commissioner admitted he could recall only the *substance* of the testimony of each witness. The Supreme Court of the United States sustained the trial judge's ruling. In pertinent part, it said:

"There was no error in admitting the testimony. The precise language of the deceased witnesses was not necessary to be proved. To hold otherwise would, in most instances, exclude this class of secondary evidence, and in so far defeat the ends of justice. Where a stenographer has not been employed, it can rarely happen that anyone can testify to more than the substance of what was testified by the deceased, especially if the examination was protracted, embraced several topics, and was followed by a searching cross-examination. It has been well said, that if a witness in such case, from mere memory, professes to be able to give the exact language, it is a reason for doubting his good faith and veracity. Usually there is some one present who can give clearly the substance, and that is all the law demands. To require more would, in effect, abrogate the rule that lets in the reproduction of the testimony of a deceased witness. The uncertainty of human life renders the rule, as we have defined it, not unfrequently of great value in the administration of justice. The right to cross-examine the witness when he testified shuts out the danger of any serious evil, and those whose duty it is to weigh and apply the evidence will always have due regard to the circumstances under which it comes before them, and rarely overestimate its probative force. 1 Greenl. Ev., sec. 165 and n.

"The living witness may use his notes, taken contemporaneously with the testimony to be proved, in order

to refresh his recollection, and, thus aided, he may testify to what he remembers; or if he can testify positively to the accuracy of his notes, they may be put in evidence. Greenl. Ev., sec. 166 and n."

The transcript in issue records verbatim the "material" part of Lieutenant Grant's testimony before the Article 32 investigating officer. In addition, the accused had a full and unfettered opportunity to cross-examine, and did in fact cross-examine, the witness. These are the only conditions to its admissibility as former testimony. In re Robinson, 42 F Supp 342 (D Mass) (1941). The trial testimony of the Article 32 investigating officer leaves no doubt that nothing relating to any issue in the case, or to Lieutenant Grant's credibility as a witness, was omitted from the transcript. Thus, he testified as follows:

"Q. Captain Sugdinis, I hand you Prosecution Exhibit Number 4, for identification, and ask you if you can identify that?
(Hands to witness.)
"A. This is the original typed copy of the questions and answers which were asked of Lieutenant Grant, both by myself, and the counsel for the accused.

. . . . .

"Questions by the defense:

"Q. Captain Sugdinis when you say you wrote the answers down to the questions, do you mean that you wrote the answer to every question?
"A. I did not write the answer to every question; only the answer to those questions that were material to the charges and specifications.

"Q. In other words, there were questions asked that you didn't feel, at that time, were important, and you did not record the answers?
"A. This is true. As an example, certain questions were asked Lieutenant Grant what college he attended, what fraternity was he in? He answered the question about what college he attended; what I considered immaterial questions about fraternities, I did not record.

"Q. I suggest that you rephrased. This is not a verbatim copy or transcript, of what questions and answers were asked at the Article 32 that you conducted; is that true?

"A. This would not be a verbatim copy, for example, copying it from a tape recorder; no. But the material questions and answers, as asked, are recorded.

"Q. In your opinion?
"A. My belief, yes."

Unlike the majority, I cannot disregard the nature of the testimony omitted from the transcript. The situation it presents is similar to the problem which exists when there are omissions in the transcript of the record of trial. As to the latter, we said: "[W]hen the purported record of trial omits a portion of the 'proceedings' of the court-martial, then reversal follows —*unless it is clear beyond peradventure that the omissions were inconsequential, and related only to items which in no wise could have affected the result.*" (Emphasis supplied.) United States v Walters, 4 USCMA 617, 625, 16 CMR 191. In a similar vein, we held in United States v Nelson, 3 USCMA 482, 13 CMR 38, that the requirement for a verbatim transcript must be applied "sensibly." There, as here, not every word uttered by every witness was recorded; nevertheless, we upheld the legal completeness of the transcript of the record of trial because it presented "all *material* evidence bearing on all issues." (Emphasis supplied.) *Id.*, at page 486. Indisputably, the transcript here covers the *material* testimony on all the issues that was given by Lieutenant Grant. To reject the transcript is to reject our decision in *Nelson* not to emphasize "minutia over substance," and to refuse to overturn a conviction "in the absence of prejudice to the substantial rights of the accused." *Id.*, at page 486.

Neither at trial, nor on appeal, did the defense offer a shred of evidence to challenge the completeness of the accuracy of the transcript as to the material parts of Lieutenant Grant's testimony. And it offered not a shred of evidence

challenging the Article 32 officer's testimony that the part left out was irrelevant to the issues. What is recorded in the transcript is the exact question and answer on every material point covered in the direct examination by the investigating officer and the cross-examination of defense counsel. Accordingly, law and reason justify the admission of the transcript into evidence. I would sustain the law officer's ruling.