UNITED STATES, Appellee

v

JAMES A. D. SHIDER, Private, U. S. Marine Corps, Appellant

20 USCMA 347, 43 CMR 187

No. 23,238

February 12, 1971

*Frank J. McGee, Jr., Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant George F. McGunnigle, Jr.,* JAGC, USNR.

*Lieutenant Thomas J. Donegan, Jr.,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles J. Keever,* USMC.

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted on a single specification alleging the unpremeditated murder of his two and one-half-year-old stepdaughter, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. His sentence currently stands at dishonorable discharge, total forfeitures, and confinement at hard labor for twenty-five years. Since we believe that a rehearing is necessary because of an instructional error, we need not consider the several allegations of error raised by appellate defense counsel.

The accused did not testify at the trial and the defense presented no evidence on the merits. Evidence for the Government reflected that shortly before midnight on the day in question, the accused brought his stepdaughter to the emergency room of the hospital at Camp Lejeune, North Carolina. Efforts to treat the child failed and she was pronounced dead. The cause of death was determined to be

loss of blood from massive internal injuries caused by the application, externally, of "a blunt trauma or a blunt force, as would be sustained by squeezing." Although she was pronounced dead at 1:00 a.m. on December 22d, the time of death was fixed at approximately four hours earlier.

A sentry at the main gate to Camp Lejeune testified that a man (whom he could not identify as the accused) drove through the gate, at about 11:45 p.m., stating that he was taking his child to the hospital. He asked to have an MP vehicle sent to his residence at 102 Butler Drive, Midway Park (Shider's home), as someone had broken into his home earlier that evening. Examination of the residence by military police disclosed no evidence of unlawful entry. Two children were found alone in the house.

A medical corpsman at the hospital, responding to a call that a hurt child was being brought in, met the accused at the emergency entrance. Observing a child on the seat he asked the accused what happened. Accused allegedly replied: " 'Somebody beat my kid.' " The corpsman ran with the child to the emergency room and assisted in the treatment to no avail. "The child was pronounced dead upon arrival by the doctor on duty." Earlier in the evening, this same corpsman had admitted Mrs. Shider to the hospital.

A neighbor who had been in the Shider's house in the early morning of the 21st (he requested her to come and check on his wife), testified as to the illness of the accused's wife—high fever and weak condition. She next saw the accused when he borrowed their automobile about 11:00 p.m. that evening. He did not state why he wanted the car but she assumed he was going to the hospital to see his wife. He appeared calm and normal at the time.

The officer who conducted the Article 32 investigation, Major Kozischek, testified, as a Government witness, relative to the accused's testimony, under oath, at the Article 32 hearing. According to the witness, the accused related that he was home all day on the day in question except for two brief periods of time. The first absence was of about fifteen to twenty minutes, around 8:00 p.m. when he went out to call an ambulance for his wife, and the second was around 10:45 p.m. when he went to the store. Prior to going to the store, he checked on the children and they were all asleep and well. When he again checked on the children about five minutes after his return he noticed that something was wrong with Tina Marie (the victim). He attempted to revive her by mouth-to-mouth resuscitation but was unsuccessful. He then took her to the hospital in a neighbor's car. Major Kozischek also testified that according to the accused, Mrs. Shider did not take care of the children that day, he did it alone due to her illness. "I think he stated that because she was so sick he didn't want her near the babies." On cross-examination, Major Kozischek revealed that in response to direct questions, the accused testified that he did not kill his daughter and that he did not injure his daughter on the day in question. He also testified that he loved his daughter.

It is the law officer's instructions with reference to the court's consideration of Major Kozischek's testimony, that give us concern. The record reflects that in this regard he instructed the court as follows:

"You are further advised that you may not consider anything reportedly said by the accused as testified to by the Officer conducting the Article 32 Pre-trial Investigation, unless there is in the record other evidence tending to corroborate his statement sufficiently to justify inference of the truth of the various matters contained in that statement. Other statements by the accused may not be considered as corroborative.

"If you do not find the accused's Article 32 testimony as it is here so corroborated, then you may not consider such testimony in the further

consideration of the case. If you do accept the accused's Article 32 testimony as corroborated, it is still necessary to put his testimony, along with the corroborating evidence, and all other evidence in this case to convince you of the accused's guilt of the crime alleged beyond a reasonable doubt. Otherwise, you must acquit him."

Assuming that these particular instructions were necessary,[1] they are, at best, confusing, especially with regard to the accused's denial, at the Article 32 investigation, that he had killed his daughter or that he had injured her on the day in question. It is unclear whether the law officer was requiring the court to find corroboration for all of the testimony of the accused or for only a part thereof before the court could consider it. Certainly Shider's statements that his wife was ill; that he borrowed the neighbor's car; and that he took his child to the hospital were all corroborated by independent evidence from other sources. But what of his denial under oath that he had killed or injured the child? Could the court members, under these instructions, reject this portion of the testimony as not being corroborated and still consider the other statements which put him at the scene of the offense at the pertinent time?

In our opinion, these instructions were sufficiently unclear as to make it doubtful whether the court properly understood the consideration they were to give to the accused's testimony at the pretrial hearing. In such circumstances, we may not rely on the doctrine of construing the instructions as a whole. United States v Noe, 7

USCMA 408, 22 CMR 198 (1956); United States v Holloway, 10 USCMA 595, 28 CMR 161 (1959). In view of the unsavory and provocative nature of the offense and the fact that the Government's case was, in the main, circumstantial, we believe that the doubt should be resolved in favor of the accused. United States v McIntosh, 12 USCMA 474, 31 CMR 60 (1961).

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge DARDEN concurs.

QUINN, Chief Judge (dissenting):

We granted review on three issues, none of which is remotely connected with the matter discussed in the principal opinion. On that issue, I disagree with the evaluation of the instructions and with the conclusion that they are so "unclear" as to present a fair risk that the court members misunderstood them to the accused's prejudice.

Turning to the granted issues, United States v Turner, 20 USCMA 167, 43 CMR 7 (1970), is dispositive of the accused's challenge of the sufficiency of the judge's advice as to the right to counsel. As to the effect of trial counsel's argument on the motion for a finding of not guilty, I am satisfied it did not constitute improper comment on the accused's right to remain silent, Lefkowitz v United States, 273 Fed 664 (CA 2d Cir) (1921), certiorari denied, 257 US 637, 66 L Ed 409, 42 S Ct 49 (1921), but, if it did, the judge's instructions to disregard were sufficient to eliminate any fair

---

[1] We need not decide at this time whether the testimony of the accused at the Article 32 investigation was also admissible as former testimony (United States v Eggers, 3 USCMA 191, 11 CMR 191 (1953)) for it was not offered on that basis. Cf. United States v Norris, 16 USCMA 574, 37 CMR 194 (1967); United States v Obligacion, 17 USCMA 36, 37 CMR 300 (1967); United States v Howard,

17 USCMA 162, 37 CMR 426 (1967). It apparently was offered and accepted as simply a pretrial admission. In that connection, however, attention is directed to the testimony of Major Kozischek, at page 60 of the record, that some of the recording tapes taken at the Article 32 were garbled and he "had to recollect from memory" some of the things that were said.

**349**

risk of prejudice to the accused. United States v Shapiro, 103 F2d 775 (CA 2d Cir) (1939); Baker v United States, 115 F2d 533 (CA 8th Cir) (1940). I am also satisfied that the argument was not predicated, to an impermissible and prejudicial degree, upon matters not properly in evidence. So far as the sufficiency of the evidence is concerned, the careful evaluation by the Court of Military Review demonstrates the adequacy of the evidence to support the findings of guilty.