UNITED STATES, Appellee

v

LOUIS W. TURNER, Corporal, U. S. Marine Corps, Appellant

18 USCMA 55, 39 CMR 55

---

No. 21,106

December 13, 1968

*Lieutenant Allen D. Black,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Robert F. Baldwin,* JAGC, USNR.

*Captain John J. Kelly, Jr.,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

FERGUSON, Judge:

Upon his plea of guilty, the accused was convicted of five specifications involving the possession, use, transfer, and sale of a dangerous drug, a hypnotic sedative (Seconal capsules), and one specification of violation of a lawful general regulation, for possession of these same capsules under Uniform Code of Military Justice, Articles 134 and 92, 10 USC §§ 934 and 892, respectively. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction. The convening authority affirmed the conviction but reduced the sentence to a bad-conduct discharge, forfeiture of $85.00 per month for two years, and confinement at hard labor for a similar period, and the reduction. The board of review affirmed the findings and sentence.

Following affirmance by the board of review, the Judge Advocate General of the Navy certified the case to this Court on the following issue:

"Whether the Board of Review was correct in its determination that the maximum punishment for each offense alleged under Charge I included confinement at hard labor for five years and that therefore the pleas of guilty of the accused were providently made?"

In addition, we granted review on two issues, the first of which also deals with the providence of the plea in view of an apparent misunderstanding as to the forfeitures to be approved, as noted in the pretrial agreement, and the second with the sufficiency of the law officer's instructions on sentence.

In both the certified issue and the first issue granted by this Court, we are initially concerned with the contents of the pretrial agreement. Therein, in return for the accused's plea of guilty to the charged offenses, the convening authority agreed to approve no sentence greater than: a dishonorable discharge; confinement at hard labor for thirty-six months; forfeitures such that the accused would be able to provide the $40.00 contribution required per month from the accused's pay to insure the accused's wife received basic allowances for quarters' allotment; and reduction to

Private E-1 (unsuspended). This agreement, Appellate Exhibit O, was signed by the accused and the convening authority on August 11, 1967. The date of signing is important to the first granted issue, as will be shown below.

Subsequent to accused's entry of a plea of guilty and during the law officer's inquiry into the providence of the plea, it was agreed by all parties concerned that in view of the multiplicity of certain of the charges and specifications the maximum imposable sentence to confinement at hard labor was thirteen years. This was also, apparently, the understanding of the accused, his counsel, and the convening authority at the time the pretrial agreement was executed. Accordingly, the law officer so instructed the court and the accused was sentenced to five years confinement and other penalties.

In his post-trial review of the case, the staff legal officer, however, noted his disagreement with this view. He opined that the offenses charged under Article 134, involving as they did the use, possession, etc., of Seconal, which is not "a habit forming narcotic drug" or "marihuana" (Manual for Courts-Martial, United States, 1951, paragraph 213a), should be considered as only simple disorders and punishable as such by imprisonment for four months as contrasted with the five-year confinement provided for in narcotic drug offenses (Manual, supra, paragraph 127c).

The board of review agreed that Seconal is not a narcotic but rather found it to be a chemical derivative of barbituric acid and, as such, a habit-forming drug. The board then proceeded to quote at length from publications of the United States Department of Health, Education, and Welfare, the Bureau of Drug Abuse Control, and others, pointing up the dangers in the use and abuse of barbiturates. For the reasons set forth therein, the board reached "easy concurrence with government counsel that offenses of possession, use, sale, gift of the depressant drug, Seconal,

are closely related to offenses involving narcotics and marihuana, and are punishable as such with the maximum of five years' confinement at hard labor. Arriving at this conclusion, we differ with the Staff Legal Officer and with appellate defense counsel, and hold that the accused was not misled into an improvident plea of guilty."

We find ourselves in basic disagreement with the final views of all concerned because of an apparent failure on their part to appreciate the significance of a punishment provision of the Manual for Courts-Martial and two particular acts of Congress—the passage of the "Dangerous Drug Act for the District of Columbia," Public Law 764, 70 Stat 612, 84th Congress, 2d Session, July 24, 1956, and the "Drug Abuse Control Amendments of 1965," Public Law 89-74, 79 Stat 226, 89th Congress, 1st Session, July 15, 1965. While the former created a wholly new chapter 7 to Title 33, Food and Drugs, District of Columbia Code, the latter amended several sections of the Federal Food, Drug, and Cosmetic Act (21 USC § 321, et seq.) In each, however, there was created a new offense involving the misuse and abuse of certain dangerous drugs.

In order to place this issue in proper perspective, a brief resumé of the military offense of the possession, sale, use, etc., of habit-forming narcotic drugs is deemed necessary. Since there is no such offense specified within the punitive articles of the Uniform Code, the Charge and specification is laid under Article 134, the general article. Paragraph 213a, Manual, supra, entitled Disorders and Neglects to the Prejudice of Good Order and Discipline in the Armed Forces, provides, in pertinent part, at page 382, "It is a violation of this article wrongfully to possess marihuana or a habit forming narcotic drug. Possession of marihuana or of a habit forming narcotic drug is presumed to be wrongful unless the contrary appears." The Legal and Legislative Basis for the Manual states, at page 294, that, "The presumption arising from possession

of marihuana or a habit forming narcotic drug finds precedent in 21 USC 174. . . . The presumption in paragraph 213a is limited to 'habit forming' narcotic drugs. This is for the same reason that marihuana has been included within the presumption—because of its inherent characteristics." The sample specifications for this offense found in Appendix 6c, page 490 of the Manual, supra, both refer to the possession or use of *habit-forming narcotic drugs* or marihuana.

The Table of Maximum Punishments under Article 134, lists a specific punishment to confinement of five years for drug offenses as follows: "Drugs, habit forming, or marihuana, wrongful possession or use." Determining that Seconal is recognized as a habit-forming drug, the board of review below, and the Government counsel here, concluded that it came within this punishment provision and thus subjected the accused to a five-year penalty. The Table of Maximum Punishments reference, however, is not the whole of the matter. The Manual, supra, expressly provides that the description of offenses in the Table is merely a convenient means of identifying the offense and in "case of discrepancy between a heading or description of an offense in the table and any other part of this manual, *such other part shall be controlling.*" (Emphasis supplied.) Manual, supra, paragraph 127c, page 217–218. We considered the restricted nature of the listing of an offense in the Table of Maximum Punishments in United States v Blue, 3 USCMA 550, 13 CMR 106. We there held that the Table of Maximum Punishments listing under Article 134 of possession of a false or unauthorized pass, which made no mention of an intent to deceive, was merely a "skeletonize[d]" description of the offense so that the three years punishment prescribed by the Table was applicable only to the offense of possession of a false pass with the intent to deceive—other pass offenses being simple disorders. ▆▆▆ ▆ The same situation is present here. The fact that the word narcotic does not follow

"habit forming" in the Table of Maximum Punishments is not an indication that *all* drug offenses are to be similarly classified and punished. In addition, we have been unable to find, nor has there been called to our attention, any mention in the Code, the Manual, or in the Legal and Legislative Basis any other offense referring to drugs not classified as *habit-forming narcotic or marihuana.*

The narcotic drugs referred to in 21 USC§[1] 174 are defined in section 4731 (a), Title 26, USC, as: Opium, isonipecaine, coca leaves, opiate; any compound, manufacture, salt, derivative, or preparation thereof; or any substance which is chemically identical with any of these substances. Opiate is further defined as any drug thereafter found by the Secretary of the Treasury, under controlled circumstances, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine or capable of conversion into a drug having such capability. (*Id.,* 26 USC, at page 5520.) The penalty for an initial violation of the Federal Narcotics Act is imprisonment for not less than five years or more than twenty years and, in addition, one may be fined not more than $20,000.00. Subsequent violations provide for imprisonment of from ten to forty years and a similar fine, or both.

The narcotics law for the District of Columbia (District of Columbia Code, Title 33, § 401, *et seq.*) is very similar as to definition of the drugs involved. There is, however, one notable difference—the penalty. For the first offense under the District of Columbia Code, the offender can be sentenced to imprisonment for a term not exceeding one year and fined from $100.00 to $1,000.00, or both, and for subsequent offenses these provisions are accelerated to ten years and from $500.00 to $5,000.00.

In neither of these codes is any mention made of drugs other than

---

[1] See 21 USC § 171. Narcotic drugs; definitions; and references in text thereto at page 4323.

58

those described as *habit-forming narcotic*.

We agree with the board of review that Seconal is not a narcotic drug. Blakiston's, New Gould Medical Dictionary, defines seconal sodium as the "Trade-mark for monosodium 5-allyl-5-(1-methylbutyl) barbiturate, a short-acting hypnotic and sedative." Barbiturate is defined therein as "A general term denoting a derivative of barbituric acid . . . [chemical formula], formed by the substitution of an aliphatic or aromatic group on a carbon or nitrogen atom in the acid."

The presence of specific enactments regulating the sale or possession of barbiturate drugs and preparations has been held to constitute legislative recognition that a barbiturate is not a narcotic, within the meaning of a statute prohibiting the use of fraud or deceit in obtaining a narcotic prescription. People v Wittpen, 190 Misc 565, 75 NYS2d 670 (1948); 25 Am Jur 2d, Drugs, Narcotics, and Poisons, § 3, page 285. In the cited case, the court, noting that Seconal is separately dealt with under a new enactment of the Penal Law, granted a motion to dismiss on the ground that the information did not state sufficient facts to constitute a violation of section 438 of the Public Health Law which dealt exclusively with the regulation of narcotics.

The passage by the Congress of the United States of the "Dangerous Drug Act for the District of Columbia" (District of Columbia Code, supra, Title 33), and the "Drug Abuse Control Amendments of 1965" to the Federal Food, Drug, and Cosmetic Act (Title 21, United States Code, supra) is further recognition of the fact that barbiturates and the other dangerous drugs (amphetamines, hallucinogens, etc.) are not included within the provisions of the various narcotics acts. Any doubt on this point is obviated by the statement in each of the pertinent statutes specifically excluding therefrom any drug regulated by the Federal narcotic drug laws, or by the narcotic drug laws of the District of Columbia. Both of these acts specifically note that the drugs dealt with in the new statutes are *dangerous* and *habit-forming*. The penalties which may be imposed hereunder differ from those for the narcotics statutes. In the District of Columbia the first offense calls for imprisonment not to exceed one year or $100.00 to $1,000.00, or both; subsequent offenses up to ten years at $500.00 to $5,000.00, or both. The United States Statute adopted the penalties already prescribed in 21 USC § 333(a) (previously designated for a violation of 21 USC § 331) and, in addition, provided an even greater punishment for an offender who is over the age of eighteen years who sells, delivers, or otherwise disposes of the designated drugs to one who, himself, has not yet attained his twenty-first birthday. The existing penalties were imprisonment not to exceed one year or a fine of not more than $1,000.00, or both, for a first offense and up to three years or $10,000, or both, for subsequent offenses.

In view of our finding in this area, we are constrained to hold that Seconal is not a drug within the meaning of the charged offenses and is not subject to the punishment provided therefor in the Table of Maximum Punishments. Since the contrary view was the basis for the board of review's affirmance, we hold, in partial answer to the certified question, that the board was not correct.

This, however, does not fully resolve the question for it also asks whether the pleas of guilty of the accused were providently made. As we have noted, the Staff Legal Officer was of the view that since the specifications did not allege that the drug Seconal was a habit-forming narcotic drug, "the apparent gravamen of the drug offense," only that it was a "dangerous drug, a hypnotic sedative," an essential element of the offense charged was missing from the specifications. He opined, however, that the accused's conduct was at least manifestly offensive to the prejudice of good order and discipline under Article 134.

We believe that these offenses are something more than mere simple disorders. Article 134 of the Code, supra, also provides for prosecution thereunder for the commission of "crimes and offenses not capital."

Paragraph 213c, Manual, supra, in discussing this section, states that included therein are "those acts or omissions, not made punishable by another article, which are denounced as crimes or offenses by enactments of Congress or under authority of Congress and made triable in the Federal civil courts." State and foreign law becomes applicable only within the provisions of the Assimilative Crimes Act, 18 USC § 13. See also Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1238. See generally United States v Jackson, 17 USCMA 580, 38 CMR 378; United States v Picotte, 12 USCMA 196, 30 CMR 196; United States v Harkcom, 12 USCMA 257, 30 CMR 257. The punishment to be imposed in such cases is that authorized by the United States Code or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or as authorized by the custom of the service. Manual, supra, paragraph 127c, page 214. Where applicable, State punishment is authorized. According to the Legal and Legislative Basis, supra, page 188, this determination was made in order to achieve uniformity of sentence and to insure that comparable offenses will not be punishable in military law to any greater extent than in the civil jurisdictions of the United States. United States v Jackson; United States v Picotte; United States v Harkcom, all supra.

In the case at bar, the accused agreed to plead guilty on the assumption that the maximum imposable term of confinement was thirteen years—five years per offense with multiplicious offenses involved. The District of Columbia and United States Codes each provide a one-year period for each initial dangerous drug offense. Considering the multiplicious aspects of these charges, it is obvious that a serious misunderstanding as to the maximum imposable sentence to confinement is involved.

Article 45, Uniform Code of Military Justice, 10 USC § 845, provides in pertinent part that "if it appears that . . . [the accused] has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, . . . the court shall proceed as though he had pleaded not guilty." While that provision may not fit this case precisely, it suggests that Congress intended an accused should not be permitted to plead guilty if there is an honest mistake inducing his judicial confession.

In United States v Hamill, 8 USCMA 464, 24 CMR 274, involving a guilty plea to a charge of larceny, we found such a misunderstanding to exist and held the plea to be improvident. Because of the peculiar circumstances of the mistake, we directed that alternative actions could be taken—either remission of the discharge (the corpus of the mistake) or a rehearing. And in United States v Windham, 15 USCMA 523, 525, 36 CMR 21, we said, "a plea of guilty may be improvident if it is predicated upon a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject. United States v Zemartis, 10 USCMA 353, 27 CMR 427; United States v Hamill, 8 USCMA 464, 466, 24 CMR 274."

In the case at bar, we believe the misunderstanding as to the offenses and the punishment to be of such magnitude as to warrant holding the plea improvident. Accordingly, the certified question is answered in the negative.

The first of the granted issues also concerns the providence of accused's plea because of the inclusion in the pretrial agreement of a provision that the convening authority would approve no greater forfeitures than would allow the accused to continue to receive pay in sufficient amount to insure that his wife would continue to get a basic allowance for quarters.

60

The accused was sentenced to total forfeitures and the convening authority, on recommendation of the Staff Legal Officer in order to accord with the agreement, reduced this to a forfeiture of $85.00 per month for two years. The reduction, however, was ineffective for apparently overlooked by all parties concerned was the fact that the accused's enlistment had expired July 3, 1967, some thirty-nine days prior to the signing of the agreement August 11, 1967. Under a ruling of the Comptroller General he has been determined to be entitled to no pay and his wife to no allotment. Cf. United States v Dickenson, 6 USCMA 438, 448, 20 CMR 154.

The accused avers that had he known of this situation (he was already in confinement when his pay status ended), he would not have entered into the agreement and hence his plea was improvident, based as it was on a serious misunderstanding and an honest mistake of fact.

Inasmuch as we have already determined that the plea was improvident, we need not reach this issue for it will not reoccur in the event of a rehearing.

The final granted issue questions the sufficiency of the law officer's instructions under our opinion in United States v Wheeler, 17 USCMA 274, 38 CMR 72.

The board of review specifically found no error herein but, even assuming error, it found no prejudice under our opinion in United States v Mabry, 17 USCMA 285, 38 CMR 83.

Again, we need not reach the issue. We reiterate, however, that the instructions on sentence should be meaningful and call attention to our views thereon as expressed in *Wheeler*, supra.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN concurs.