UNITED STATES, Appellee

v

NICHOLAS J. VILLA, Seaman Recruit,
U. S. Coast Guard, Appellant

19 USCMA 564, 42 CMR 166

No. 22,713

July 17, 1970

*Lieutenant Commander Robert J. Finan,* USCG, argued the cause for Appellant, Accused.

*Lieutenant Joseph R. Sahid,* USCGR, argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

The General Counsel of the Department of Transportation has certified for review the question whether at a special court-martial by the military judge alone it was "prejudicial error for the military judge . . . to examine the contents of the pretrial agreement [between the accused and the convening authority] as part of his inquiry" into the providence of the accused's plea of guilty.

Initially, the accused was charged with desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. He had a history of previous unauthorized absences with the last ending on May 26, 1969, less than six weeks before the eighty-day unauthorized absence which constituted the basis for the desertion charge. After the desertion charge had been referred to a court-martial for trial, the accused proposed to the convening authority that it be reduced to the lesser offense of unauthorized absence, in violation of Article 86, Code, supra, 10 USC § 886; he also indicated he would enter a plea of guilty to the lesser offense provided that, if the court-martial imposed a bad-conduct discharge as part of the sentence, the convening authority would "execute that discharge immediately upon final approval and will remit any confinement still unserved by that time." The proposal was accepted by the convening authority, and a reduced charge of unauthorized absence was referred for trial. The accused then requested trial before only a military judge. It further appears that before trial the accused executed a document in which he indicated he had discussed the "seriousness and consequences" of a bad-conduct discharge with his counsel, but he believed it was in his own "best interest" not to "avoid" a bad-conduct discharge; to that end, he had instructed his counsel to offer no evidence or argument "against the imposition of a BCD." In due course, the

564

case came on for hearing before Military Judge F. D. Hunter, Commander, United States Coast Guard.

Judge Hunter conducted an extensive hearing as to the circumstances of the accused's plea. Among other things, he ascertained that the accused understood the difference between trial by a regular special court-martial composed of three members and trial by a military judge alone, and that he understood the effects of a plea of guilty. The accused's answers to some of Judge Hunter's questions tended to indicate there was a pretrial agreement with the convening authority. Judge Hunter asked if there was such an agreement. At that point, defense counsel requested a brief recess.

When court reconvened, defense counsel informed Judge Hunter there was an agreement, and at the judge's request he gave him a copy. Judge Hunter then examined the accused as to his understanding of the agreement. He ascertained that the accused knew the agreement did not expressly limit the period of confinement. At the end of his examination, Judge Hunter accepted the accused's plea of guilty as "freely and voluntarily and intelligently made."

During the sentence part of the trial, no evidence was offered by the defense in mitigation or extenuation. Judge Hunter advised the accused of his right to present evidence, and pointed out there were only "minimal facts" before him to tend toward imposition of a "lenient" sentence. The accused insisted it was in his own "best interest" to submit nothing. On his own initiative, Judge Hunter reviewed the Government's evidence of previous convictions for unauthorized absence and limited the absences to "one day absences" because of the form of the specifications, although the sentence in each case indicated the absence "may have been for a longer period of time."

Focusing only on whether the accused was "prejudiced" by Judge Hunter's review of the pretrial agreement, the record of trial compels the conclusion that he was not. Prejudice, however, is not the real issue. What is controverted is the legality of the judge's inquiry into the provisions of the pretrial agreement. Appellate defense counsel contend that knowledge of the sentence provision amounted to "a form of unlawful command influence," which destroyed Judge Hunter's "objectivity." The contention is sufficiently broad to challenge also the propriety of the judge's knowledge of the fact that the charge had been reduced from desertion to unauthorized absence. We turn, therefore, to consider the effect of these factors on a trial judge's judicial conduct.

Trial before a military judge without court members is new to military law. Article 16, Code, supra, 10 USC § 816, added by the Military Justice Act of 1968, Public Law 90–632, 90th Congress, Second Session, 82 Stat 1335. Under the new practice, when trial is before the military judge alone, as requested by the accused, the judge determines the accused's guilt or innocence and imposes sentence in the event of conviction. The procedure is comparable to that in Federal courts. Its adoption for military courts substantially enlarged the powers and responsibilities of the military judge. However, the enlargement of judicial power did not change the existing doctrine that the military judge must be scrupulously impartial and uninfluenced by command decree or desire in the exercise of his judicial functions. It is with this principle in mind that we must assess the risk of improper influence which might result from knowledge on the part of the judge that the offenses referred to trial are less severe or fewer in number than those with which the accused was originally charged.

The trial judge in a civilian court is frequently aware of the fact that the defendant was subject to more serious or more numerous charges than those on which he is to be sentenced. In fact, charges to which the accused will not be required to plead

**565**

are commonly disposed of by the judge's order at the entry of a *nolle prosequi* by the Government or by its motion to dismiss. See Rule 48, Federal Rules of Criminal Procedure; Wright, Federal Practice and Procedure: Criminal § 811. So far as we know, neither the judge's knowledge of the elimination of charges nor his role in their disposition has ever been regarded as disqualifying him from accepting the accused's plea of guilty to the remaining charges or from imposing sentence. A charge is not proof of guilt. But, even if there is sufficient available evidence to support the charge, there may be good reason to justify its dismissal or acceptance of a plea of guilty to a lesser offense. A dismissed specification, for example, may merely allege a different aspect of the same offense stated in another specification; and a plea to a lesser offense may be the appropriate way to obviate difficult and disputed questions of fact. There are so many legitimate reasons for agreement between the prosecution and the accused on a *nolle prosequi* or dismissal of particular charges, that it cannot, in our opinion, be reasonably concluded that knowledge of such agreement would ineluctably incline the trial judge to impose a more severe sentence than he would otherwise impose for those offenses to which the accused pleads guilty or of which he is convicted.

Consideration of the probable effect of the sentence provision of a pretrial agreement on the trial judge must begin with the principle that the judge must be satisfied that the accused understands the meaning and effect of his plea. United States v Care, 18 USCMA 535, 40 CMR 247 (1969). Part of the judge's inquiry is necessarily directed to the accused's understanding of the punishment to which he will be subject as a result of his plea of guilty. United States v Turner, 18 USCMA 55, 60, 39 CMR 55 (1968); United States v Van Valkenberg, No. 420982 (ACMR March 9, 1970). Appellate defense counsel argue that the judge should be limited

to determining whether the accused knows the maximum penalty. However, a pretrial agreement, which includes agreement on the sentence, changes the legal maximum from that provided by the Table of Maximum Punishments prescribed by the Manual for Courts-Martial, United States, 1969, to the punishment provided in the agreement. United States v Brice, 17 USCMA 336, 38 CMR 134 (1967). Consequently, the accused's understanding of the maximum prescribed by law is no assurance that he understands and agrees with the maximum prescribed by the agreement. In fact, disagreement as to the meaning and scope of the sentence provision in a pretrial agreement is not uncommon. United States v Veteto, 18 USCMA 64, 39 CMR 64 (1968); United States v Clark, 17 USCMA 26, 37 CMR 290 (1967); United States v Turner, supra, at pages 60–61. Consequently, there is good reason for the trial judge to determine that the accused understands the sentence provision of the pretrial agreement. The question then is whether knowledge of the sentence agreement by the judge presents a potential of prejudice to the accused that outweighs the benefits of the inquiry into his understanding of the agreement.

The trial judge may believe that the agreed sentence is too lenient and he may be inclined to impose a more severe penalty, but it is hardly likely that he will. However strongly he might feel about the inappropriateness of the agreed sentence, he is not likely to want to impose a sentence that can have no legal effect. Apart from probability, if the trial judge elects to impose a more severe sentence than the agreement provides, the convening authority must reduce it to that provided in the agreement. United States v Brice, supra. Manifestly, therefore, no prejudice can result to the accused if the trial judge is inclined to regard the agreed sentence as too lenient. Less obvious in its apparent effect is the situation in which the trial judge believes the sentence provision in the agreement is too

severe. Is there a fair risk that in this situation the judge will be influenced by the agreement, as an indication of the wishes of the convening authority?

Appellate defense counsel contend that the minimal effect of knowledge of the sentence provision of the pretrial agreement is to restrict the discretion of the military judge. They picture the judge as afraid to incur the displeasure of, or retributive action by, the convening authority which might result from imposition of a sentence less severe than that provided in the agreement. Government counsel vigorously contend that the military judge would no more violate his oath of office for personal favor or career advancement than would the civilian judge. A closer look at the pretrial agreement is helpful to resolution of these opposing views.

Pretrial agreements usually originate with the accused. Most records of trial that we have seen contain no factual information to indicate that the proposed sentence is predicated upon matters relating specially to the accused. Perhaps the most that can be inferred is that since the sentence was proposed by the accused, he probably considered it "fair and acceptable." United States v Johnson, 19 USCMA 49, 50, 41 CMR 49 (1969). However, numerous circumstances may arise between acceptance of the proposed sentence by the convening authority and the accused's trial. The accused, for example, may have been placed in pretrial confinement between the two events; or he may, while in pretrial confinement, have been subjected to improper conditions of confinement; or he may have learned of the availability of mitigating evidence that he had not previously expected. See United States v Robbins, 16 USCMA 474, 37 CMR 94 (1966). In addition to a change in conditions, there may be matters in mitigation and extenuation that simply were not considered by the accused and the convening authority at the time of the agreement. All these factors, and a myriad of other possibilities, indicate that the circumstances which led the convening authority to accept the accused's proposed sentence may reasonably be expected to be factually different from the sentence matters presented to the military judge at trial. Cf. United States v Tavolilla, 17 USCMA 395, 38 CMR 193 (1968). We are convinced, therefore, that neither the convening authority nor the military judge would regard the agreement as prescribing a sentence which the military judge could not change without derogating the power and the position of the convening authority. We are also convinced that both the convening authority and the military judge would treat the sentence provision as important only to effectuation of the agreement, and not as an order or wish on the part of the convening authority to influence the judge in his own determination of an appropriate sentence.

The remarks and the actions of Judge Hunter in this case demonstrate an independent approach to the sentence. We perceive no reasonable risk that other trial judges would be any less independent and impartial because they knew the sentence terms of a pretrial agreement. We conclude, therefore, that there is no reasonable risk that knowledge of the sentence provision of a pretrial agreement would incline the military judge to abstain from adjudging a less severe sentence than he would otherwise have imposed.

Relying upon the agreement itself, appellate defense counsel contend it precluded submission to Judge Hunter in any event because it was described as "a privileged communication" and provided it was "not to be brought to the attention of the members of the court-martial." Government counsel maintain that this provision was not intended to apply to a trial before a military judge. The argument need not detain us. The record of trial demonstrates that defense counsel specifically considered whether he wanted to submit the agreement to Judge Hunter, and he affirmatively

determined to do so. Whatever the original intention of the agreement, therefore, the defense changed it by its considered submission to the judge at trial. See United States v Wolfe, 8 USCMA 247, 250, 24 CMR 57 (1957).

We answer the certified question in the negative, and affirm the decision of the United States Coast Guard Court of Military Review.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

While it might be argued that *this particular accused* was not harmed by virtue of the fact that the military judge, who alone sat in judgment on the accused, was made aware of the contents of the pretrial agreement, including the agreed-upon sentence, I believe that the practice is fraught with danger and should be discontinued. The very fact that my brothers find it necessary to discuss at length the problems involved is, in my opinion, indicative of the potential for prejudice to an accused. The Judge Advocates General of the Navy and the Army have recognized the inherent dangers and each service has issued specific instructions thereon. Manual of the Judge Advocate General, Department of the Navy, section 0114b(1)(c) (1969), provides in part:

". . . The military judge hearing the case alone, without members, is not, prior to his adjudging sentence, authorized to examine or inquire into that portion of the pretrial agreement which sets forth the specific sentence agreed upon by the accused and the convening authority."

The Military Judges' Guide, chapter 3, Department of the Army Pamphlet 27–9, contains the following language:

". . . Normally sound practice indicates that in a trial before a military judge alone, the military judge in inquiring into the providence of the plea should defer consideration of the provisions of the agreement relating to the quantum of the agreed punishment until after announcing the sentence."[1]

The Coast Guard certification in this case presupposes error for it asks whether the military judge's action constituted *"prejudicial* error." (Emphasis supplied.) Since the Air Force does not sanction the use of pretrial agreements, the matter is not pertinent to Air Force courts-martial.

The military practice of pretrial agreements has no direct civilian counterpart. The practice of plea bargaining in the civil system, which frequently results in a plea of guilty to charges fewer in number or lesser in degree than originally brought, does not carry with it a previously agreed-upon sentence. While a civilian prosecutor may agree to recommend a particular sentence or clemency of some sort, including probation, the agreement has no legal effect and the ultimate determination as to sentence is made by the court alone, secure in the knowledge that the

---

[1] We were informed by the Government in their brief, however, that in United States v Razor, 41 CMR — (1970), a United States Army Court of Military Review held that a military judge sitting alone committed no error by examining the terms of a pretrial agreement prior to imposing sentence. That case is now before this Court and my brothers have affirmed based on their decision herein. United States v Razor, 19 USCMA 570, 42 CMR 172 (1970). It is noteworthy that in *Razor,* the quantum of punishment agreed upon was set forth as an appendix to the pretrial agreement.

While the Court of Military Review found no indication in the record reflecting that military judge had examined the appendix to the agreement, it assumed, *arguendo,* that he had. However, although deciding that the examination of the quantum portion of the agreement was within the discretion of the military judge, it specifically called attention to the Military Judges' Guide, chapter 3, Department of the Army Pamphlet 27–9, which, as noted, provides that this examination not be made until after the imposition of sentence.

sentence adjudged is not an exercise in futility, *that is,* subject to change at the first stage of appellate review.

As my brothers note, trial before a military judge without court members is new to military law. Article 16, Uniform Code of Military Justice, 10 USC § 816. The new procedure, for determination of guilt or innocence and for imposition of sentence, is comparable to that which pertains in Federal courts. *The difference lies in the predetermined sentence.* While Federal judges have always decided what is an appropriate sentence, this is a unique responsibility for his military counterpart. If only because it is unique, the latter should be as unencumbered as the former in exercising his personal judgment as to sentence. But, in any event, knowledge of the terms of the previously agreed-upon sentence can only be viewed as adding a new, disturbing element to the information upon which his determination is based, a burden not faced by the Federal civilian judge. In exercising his new responsibility, the military judge should not be so taxed.

The convening authority, with whom an accused makes the pretrial agreement, is an appellate authority (United States v Boehm, 17 USCMA 530, 38 CMR 328 (1968); Lowe v Laird, 18 USCMA 131, 39 CMR 131 (1969)) with broad powers over the decisions of a court-martial. United States v Massey, 5 USCMA 514, 18 CMR 138 (1955). See also United States v Smith, 16 USCMA 274, 36 CMR 430 (1966). While he may not increase the punishment adjudged by the court-martial, nor approve a sentence in excess of that agreed upon if it is less than that adjudged, he may approve a sentence lesser than either adjudged or agreed upon or no sentence at all. In addition, he may disapprove the entire proceedings for any or for no reason. United States v Massey, supra. Cf. United States v Robbins, 18 USCMA 86, 39 CMR 86 (1969). Because of his knowledge of the military judicial system, the military judge is already aware of these realities. It is, in my opinion, asking too

much to expect him to maintain an impartial disposition relative to sentence after he learns, through perusal of the pretrial agreement, that the initial appellate authority has already determined an appropriate sentence and that if he adjudges a sentence in excess thereof, the ultimate sentence must be reduced. Not infrequently, sentences returned by a court-martial are less than that agreed upon. Where this likelihood exists, perusal of the terms of the agreement undoubtedly would have an effect on the judge's decision.

The issue before us does not concern the competence or ability of the military judge to act in accordance with his judicial oath. To the contrary, when he is unaware of the details of the agreement, he is unfettered by extraneous matter and protected from any question of influence which might arise by virtue of his having knowledge, as evidenced by the fact that this controversy is now before this Court. Nor is the maximum *imposable* sentence changed by virtue of the pretrial agreement; only the sentence which may be *approved* by the convening authority is affected.

My brothers concede the likelihood of such influence, for the principal opinion states: "The trial judge may believe that the agreed sentence is too lenient and he may be inclined to impose a more severe penalty, but it is hardly likely that he will. However strongly he might feel about the inappropriateness of the agreed sentence, he is not likely to want to impose a sentence that can have no legal effect." I agree completely and it is for this very reason that I believe the military judge should not be aware of the contents of the pretrial agreement. When he is, his judgment as to sentence quite likely will not be his own as the law requires.

The Judge Advocate General of the Army recognized that on occasion there may be disagreement as to the meaning and scope of the sentence provision in a pretrial agreement. United States v Clark, 17 USCMA 26,

37 CMR 290 (1967); United States v Turner, 18 USCMA 55, 39 CMR 55 (1968); United States v Veteto, 18 USCMA 64, 39 CMR 64 (1968). The Department of the Army Pamphlet referred to above states that, "If after considering the quantum provisions the military judge determines for any reason that the plea was improvident, he must take appropriate corrective action." Handled in this manner, the judge's responsibility under United States v Care, 18 USCMA 535, 40 CMR 247 (1969), can be met without the danger of influence upon his determination as to an appropriate sentence.

The pretrial agreement itself is an aberration in the law, peculiar to military justice alone. It has been employed in military trials since 1953. Although this Court has approved its use, such approval has not been without reservation. United States v Welker, 8 USCMA 647, 25 CMR 151 (1958); United States v Allen, 8 USCMA 504, 25 CMR 8 (1957). Utilization of the pretrial agreement is fraught with difficulties. See generally, United States v DuBay, 17 USCMA 147, 37 CMR 411 (1967); United States v Cummings, 17 USCMA 376, 38 CMR 174 (1968). As noted above, they are nonexistent within the judicial proceedings of the Air Force. Because they are an aberration and in view of the numerous difficulties entailed in their use, we should examine carefully their impact on military justice. In this regard, I agree with the Judge Advocates General of the Army and the Navy that the military judge should at least not be aware of the provisions of the agreement relating to the quantum of punishment until after announcing the sentence. Only in this manner can it be said that his judicial determination as to an appropriate sentence was unfettered.

I would answer the certified question in the affirmative, reverse the decision of the United States Coast Guard Court of Military Review as to sentence and direct that a rehearing on sentence may be ordered.