UNITED STATES

v.

Private First Class Ronald M. MAT-THEWS, 243–84–3653, US Army, Company C, 44th Engineer Battalion (C) (H), APO San Francisco 96358.

SPCM 11978.

U. S. Army Court of Military Review.

Sentence Adjudged 3 Feb. 1976.

Decided 13 May 1976.

Appellate Counsel for the Accused: CPT Theodore H. Watts, JAGC; MAJ Richard J.

Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Jack M. Hartman, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

Before CLAUSE, DONAHUE and COSTELLO, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

One term of appellant's pretrial agreement provided for suspension of any punitive discharge imposed at his special court-martial trial for larceny. While inquiring into the providency of appellant's guilty plea, the trial judge looked at the whole agreement, including an appendix containing the agreed-upon sentence. Satisfied that the plea was provident, the judge found appellant guilty and imposed a sentence which included a bad conduct discharge. Then he made a recommendation of record that the discharge be suspended by the convening authority.

Appellant asserts that the judge's examination of the sentence portion of his pretrial agreement was prejudicial error because that examination made it " . . . impossible for him to arrive at an appropriate sentence." Assuming error for the moment, we observe that any sentence within the jurisdictional limits of a BCD special court-martial would have been "appropriate" on these facts. However, the judge's sentence, including his recommendation for probation, was quite lenient and significantly less than the maximum which might have been approved under the agreement. Thus, there was no prejudice.

That finding has been made in order to be fully responsive to appellant's assertion of prejudice, but is really unnecessary because there was no error in the trial judge's action. *United States v. Villa,* 19 U.S.C. M.A. 564, 42 C.M.R. 166 (1970); *United*

*States v. Morrell,* 2 M.J. 479 (A.C.M.R. 24 December 1975).*

Accordingly, the findings of guilty and the sentence are affirmed.

COSTELLO, Judge, concurring:

I agree fully with the opinion of the Court, but wish to address two issues common to cases like this, although not raised before us. The first issue is whether the military judge might hear everything normally presented after findings and then announce that he will not impose sentence until after some period of time such as six or 12 months has passed. The second issue has been cast by the Court of Military Appeals as follows:

> Whether the military judge had the power to suspend those portions of the sentence as he recommended be suspended by the convening authority, under the provisions of 18 USC § 3651. (Order Granting Petition for Review, *United States v. Occhi,* NCM 75–1239. USCMA Daily Journal, March 12, 1976, Docket No. 31,663.)

Either of these actions, suspension of the punishment imposed or suspension of the imposition of punishment, initiate a period of probation under § 3651. *United States v. Stupak,* 362 F.2d 933 (3rd Cir. 1966). The term probation used in this opinion will encompass both types of "suspended" sentences, so that the two issues may be treated together.

There is a certain initial appeal to the idea that military trial judges should be able to suspend some sentences they impose. That appeal lies in the movement in military law toward consistency with federal practice and the desire for a sentencing

authority with maximum skills appropriate to the task. Some local experiments with the exercise of probationary powers have been conducted and students of military law have discussed the matter from time to time. The subject, therefore, is current; it is also one that has attributes within the particular competence of this Court with respect to sentences. *Jackson v. Taylor,* 353 U.S. 569, 580, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957); *Fowler v. Wilkinson,* 353 U.S. 583, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957).[1]

As will be shown below, the general aspects of this issue are legislative questions; however, the issue has both a policy aspect and a legal aspect which are cognizable in the context of a judicial approach to the exercise of probationary powers by military judges under present law. The legal aspect involves the immediate availability of § 3651 to military judges and will be discussed first.

I

The legal aspect to the problem of the existence of a probationary power in military trial courts lies in interpreting the language of the Federal Probation Act of 1925 which as amended in 1948 establishes that power for " . . . any court having jurisdiction to try offenses against the United States . . . ." 18 U.S.C. § 3651. Do courts-martial fall within the phrase "any court."? Courts-martial are courts, and have been so recognized since well before the significant expansion of their powers in 1951 and 1968. *McClaughry v. Demming,* 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); *Runkle v. United States,* 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1893).

---

* We are aware that the Court of Military Appeals has granted petitions for review in two cases which contain issues similar to this one. At this time, *Villa* is dispositive of the error issue here and the absence of prejudice impels immediate action. Article 59, UCMJ, 10 U.S.C. § 859. *See also* Chief Judge Fletcher's concurring opinion in *United States v. Elmore,* 1 M.J. 262 (January 16, 1976).

1. A notion of special expertise such as the Supreme Court attributed to us in *Jackson* is to be invoked only with extreme circumspection.

Nevertheless there are few courts which can claim over 240 years of experience in a narrow area of law such as the one we administer. For reasons to be stated below, this Court is not an appropriate level for exercise of the power to suspend. Although that is not a question of the adequacy of a particular sentence which was the issue in *Jackson,* the competence of this Court as to individual sentences includes the ability to appraise the utility and appropriateness of types of sentences.

A statement is sometimes made that courts-martial are courts of limited jurisdiction, thereby suggesting that they are less than courts. But this overlooks the fact that all courts created by Congress are courts of limited jurisdiction. *Ex Parte Bakelite Corporation,* 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929). Their limited character is a product of the constitutional doctrine of delegation of powers from the states to the federal government. *National Insurance Company v. Tidewater Company,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). [Dissenting opinion of Vinson, C. J.] The proper inquiry, then, is not "Is this a limited tribunal?" The correct question is "How or by what is it limited?" Limitations may affect actions in particular cases, but the tribunal is a court if the creating statute gives it jurisdiction to hear and determine controversies "susceptible of judicial cognizance." *Williams v. United States,* 289 U.S. 553, 564–65, 53 S.Ct. 751, 754, 77 L.Ed. 1372 (1933).

In the case of military tribunals, the limitations are to military personnel and criminal cases arising under the Uniform Code, a federal statute. Those criminal cases are "susceptible of judicial cognizance," but the tribunals are "a special system of military courts". *Palmore v. United States,* 411 U.S. 389, 404, 93 S.Ct. 1670, 1679, 36 L.Ed.2d 342 (1973) *citing O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). *See also Altmayer v. Sanford,* 148 F.2d 161, 162 (5th Cir. 1945); *McDonald v. Lee,* 217 F.2d 619 (5th Cir. 1955); and *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) [Concurring opinion]. Thus courts-martial are specialized, but linguistically at least may come within the phrase "any court." However, that is not the end of the inquiry.

Courts-martial are best characterized as "legislative courts." *See Kinsella v. Krueg-*

er, 351 U.S. 470, 76 S.Ct. 886, 100 L.Ed. 1342 (1956) [Reversed on other grounds, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).] In the exercise of its powers under Article I and Article IV, Congress may establish both civil and criminal courts. *Palmore, supra,* 402–405, 93 S.Ct. 1670. The court-martial is but one example of a " . . . context in which criminal cases arising under federal statutes are tried and defendants convicted in non-Art. III courts." Id., at 404, 93 S.Ct. at 1679.[2]

That last quotation from the language of the Supreme Court would appear to bring the court-martial even closer to the scope of the Probation Act than the mere generality of the phrase "any court" would suggest. There is little apparent difference between what the Supreme Court described as the "criminal cases arising under federal statutes" which courts-martial try and the "offenses against the United States" which are the jurisdictional trigger under the Probation Act, 18 U.S.C. § 3651. The linguistic closeness does not reflect reality, however. Even though criminal acts triable by court-martial are offenses against the United States, the power to try similar cases does not, necessarily signal the existence of similar sentencing power. Courts in the federal system do not have probationary powers, *ex officio.* Because it consists in part of the legislative power to fix punishments and the executive power of clemency, probation may be granted by a court only pursuant to legislative authority. *Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916).[3] After this *"Kittles"* case Congress enacted the Probation Act in 1925 and the practice thereunder was exclusively in the United States District Courts for the next two decades.

Practice under the Probation Act of 1925 was not the only such activity in courts created by Congress, however. The *Pal-*

---

2. The relationship between military and civilian courts within the federal system is fully explored in Currie, Federal Courts (2nd Ed. 1975).

3. The Supreme Court reached that conclusion in the face of information that District Courts had been granting probation without statutory

authority for over 20 years and that, at the time of their decision, over 2,000 "probationers" existed. After the Court decided that legislation was necessary, Presidential pardons were issued to the "probationers." 5 Orfield, Crim Proc. Under the Fed Rules, 255 (1975).

*more* court sustained a criminal conviction by an Article I court, the Superior Court of the District of Columbia. The Superior Court hears criminal cases brought under the District of Columbia Code, a federal statute. However, the Federal Probation Act does not grant any power to judges of that court. Its predecessors were specifically exempted from the Probation Act of 1925 which provided " . . . for the establishment of a probation system in the United States courts, except in the District of Columbia." Act of March 4, 1925, P.L. 596, 43 Stat. 1259. Courts in the District in 1925 were trying a blend of national and local cases, but had had probation power since 1910. Their local probation authority was preserved through several changes in the names and powers of courts in the District and remained separate through the several revisions of the Probation Act. Revision Note, D.C.Code Encl. § 16–710.

That short digression into the practice in the District of Columbia shows that Congress may give probation powers to both constitutional and legislative courts, but that when it does, the action is explicit. The conclusion just made illuminates the next problem which is the effect of a 1948 amendment to the Federal Probation Act which substituted the phrase "any court having jurisdiction . . .." for the earlier identifier "courts of the United States." Again the generality of expression would make it appear that Congress was extending the coverage of the Act. However, the reason for that substitution was " . . . in order to make clear the legislative intent of Congress that the probation system is available for the rehabilitation of federal offenders in the Territories and Possessions . . .." Reviser's Note 18 USCA § 3651; Rpt.No.304, Comm on Judiciary, H.R. 3190, 1947, p. A 173. The change in the description of the courts was necessary because "courts of the United States" in that context was taken to mean those with judges appointed on good behavior, 28 U.S.C. § 451, but the judges appointed to the District Courts as in Guam are appointed for a term of years. 48 U.S.C. § 1424b. Those courts try federal offenders in the territo-

ries and are clearly distinct from the courts of local jurisdiction. *American Insurance Co. v. Canter,* 26 U.S. (1 Pet) 511, 545 (1828); *compare* 48 U.S.C. § 1424 with 48 U.S.C. § 1463 and § 1463a. Because "the Reviser's Notes were used by Congress as a full explanation of all changes made in the text of the existing law", *Affronti v. United States,* 350 U.S. 79, 82, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955), and because we know that Congress is not profligate with its grants of probationary power, the 1948 amendment must be narrowly construed. In short it applied to only a handful of territorial district courts and is no license for the exercise of probationary powers by other legislative courts.

Thus, the generality of the language in the present § 3651 is misleading. Each general phrase has a specific referrant, none of which includes courts-martial. Without legislative action to empower them, courts created by Congress have no power to suspend a sentence. *United States v. Simmons,* 6 U.S.C.M.A. 105, 6 C.M.R. 105 (1952), *citing Ex Parte United States, supra.*

## II

The policy aspect referred to at the beginning of this opinion may be highlighted by the question: Is probationary power something military trial judges *ought* to exercise? My answer under present circumstances is "No." That answer flows from a balancing of the characteristics of courts-martial in the military community with the nature and objectives of probation.

Courts-martial in the military community " . . . function in a procedural and jurisprudential environment tailored to meet military conditions." *Sedivy v. Richardson,* 485 F.2d 1115, 1119 (3rd Cir. 1973), *citing Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). The military legal environment, like its civilian counterpart, necessarily is a response to conditions in the community for which the legal system exists. The relationship between conditions and environment was described by Mr. Justice Frankfurter as follows:

"Legal doctrines are not self-generated abstract categories. They do not fall from the sky; nor are they pulled out of it. They have a specific juridical origin and etiology. They derive meaning and content from the circumstances that gave rise to them and from the purposes they were designed to serve. To these, they are bound as is a live tree to its roots." *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1248, 1 L.Ed.2d 1148 (1952) [Concurring opinion.]

Presently, probationary powers in the military services are exercised by those commanders empowered to convene courts-martial and, on occasion, by officials at the departmental level. Neither trial nor appellate courts have probationary functions, an apparent anomaly in terms of civilian practice although one well founded in special military circumstances. *See Simmons, supra,* where the Court of Military Appeals recognized an even more egregious anomaly: This Court may *remit* the entire sentence to a discharge, but lacks the power to take the lesser action of suspension. These apparent anomalies may be reconciled by inquiry into the different circumstances and purposes at the roots of the differing practices.

The purpose of the Federal Probation act was to give eligible persons an opportunity for rehabilitation " . . . under the strict surveillance of the Court . . .." *Sanford v. King,* 136 F.2d 106, 108 (5th Cir. 1943); *United States v. Glasgow,* 389 F.Supp. 217 (D.C.D.C.1975). These recent cases echo an earlier statement by the Supreme Court in which more of the nature and conditions of federal probation were stated:

"Probation is a system of tutelage under the supervision and control of the court which has jurisdiction over the convicted defendant, has the record of his conviction and sentence, the records and reports as to his compliance with the conditions of his probation, and the aid of the local probation officer, under whose supervi-

sion the defendant is placed." *Frad v. Kelly,* 302 U.S. 312, 318, 58 S.Ct. 188, 192, 82 L.Ed. 282 (1937).

The practical and legal difficulties with reading these statements into a military context are numerous.

First, the general idea is that the probationer will remain in the jurisdiction and that the court will be available to assess his progress. 2 Wright, Fed.Prac & Proc (Crim.) § 529. However, "[a] court-martial has neither continuity nor situs . . .." *Jackson v. Taylor,* 353 U.S. 569, 579, 77 S.Ct. 1027, 1033, 1 L.Ed.2d 1045 (1957).[4] Secondly, courts-martial records are not held by trial courts but are distributed and maintained in command channels and may be acted upon by convening authorities into whose command an accused is transferred after trial, especially if he is sent to the Disciplinary Barracks or Retraining Brigade.

Finally, there is no "probation officer" to whom an accused may be assigned. The purpose of a probation program in the civilian community is to increase the degree of community supervision over a probationer and to bring societal pressures short of incarceration to bear upon him. Military life is such that the degree of community control over even its law-abiding members is greater than that to which civilian probationers are subject. One measure of the degree of military control is in the fact that habeas corpus will lie to secure release from a service. *Schonbrun v. Commanding Officer,* 403 F.2d 371 (2nd Cir. 1968). An effort to increase community pressure would but interfere with imperative military relationships, and this brings me to what is the dominant idea in this consideration of special military circumstances relevant to the use of probationary powers by military trial judges.

Military law, though beginning for an individual with a change of status, is preeminently a law of relationships. That is

---

4.  There are many questions of military practice as to which this language is inappropriate, but its use here is reasonable. The Supreme Court

was speaking of the practical difficulties of ever recovering the same panel that imposed sentence.

true because the *sine qua non* of an effective military force is a complete relationship between the soldier and his commander. Their relationship includes the commander's awesome power to exercise criminal jurisdiction over his troops, but even that is tempered by principles of leadership, honor and economy. For these reasons, a commander acting on a trial sentence is not confined to the record alone, as is the trial court.

Much more could be said about the closeness and mutual dependence generated by the command relationship, but it all comes down to the question of who is going to command the military force. If a military judge can impose the tutelage of his court on a soldier, that soldier becomes fixed in position for the period of the probation. In the Army alone that could mean that manpower resources equivalent to half of one combat division had become subject to an extra-command regime during any one year. Such a degree of intrusion upon imperative military relationships is contrary to the doctrine of judicial-military relationships expressed by the Supreme Court in *Gilligan v. Morgan.* There the Court held that United States District Courts should not become involved in the day-to-day operations of military forces and said:

"The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments . . .." [5]

Soldiers under a court's probation order would be ineligible for promotion, many forms of job assignments and necessary transfers, not to mention demands on their time irreconcilable with duty obligations. On the other hand, a commander who knows both military requirements and his troops can make compatible decisions about elimination, reassignment, retraining or forgiveness.[6]

Also relevant to the question of what military trial judges "ought" to do now, as distinguished from what they might do upon a change in the law, is the manifest intent of Congress reflected in various provisions of the Uniform Code and its legislative history. Until 1950 there was some difference in the practice of the Services as to the execution of some court-martial sentences, but the Army view prevailed in the debates. The commentary to the draft Articles eventually adopted states:

"It is felt appropriate, however, to require review by the convening authority before ordering execution of any sentence. The convening authority is given power to suspend sentences other than death sentences." Index and Legislative History, Uniform Code of Military Justice, House Hearings at 1199, Senate Report at 30 (GPO 1950).

This was all before the 1968 amendments which created the military judge and gave him broad powers, but there is nothing in that action which suggests a desire to enlarge the sentencing powers of the trial court, whether composed of members and judge or a judge alone. The only reference in the *Code* to the situs of the power to suspend a sentence is in Article 71($d$) which clearly gives it to the convening authority.[7]

The Codal scheme of sentencing also reflects a unique military practice which influences this consideration of probation in military law. No court-martial sentence becomes operative until "approved" by the convening authority. Article 71, UCMJ. The sentence of the trial court is inchoate until that occurs, so that there is really

---

5. 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). In *Gilligan,* the Court's argument was that the ultimate responsibility for such decisions was in the Legislative and Executive Branches; hence, the issues raised by the exercise of military discretion in those areas were not justiciable. *Citing Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1954).

6. The classic illustrations are of the soldier who commits an offense thinking that a nice safe jail is preferable to combat duty and of the one in jail willing to purge his guilt by showing he can do a soldier's job. These are decisions for a commander.

7. The Court of Military Appeals summarized the history and rationale of the probation power in *Simmons, supra.*

nothing to suspend even though the sentence is announced in court. A trial court might delay imposition of sentence by inaction, but the accused person would simply be one whose trial was not yet completed. Thus, so long as the approval of the convening authority is required, a military accused does not reach a point at which probationary powers can be exercised at trial.

Therefore, I conclude that the threats to essential military relationships and the special ordering of military sentencing powers by Congress militate against any present effort to incorporate federal probation practices into military procedures by judicial or administrative *fiat*.